ORLICEK v. DOCKINS AND SPIKES.

5-567 and 5-615                    275 S. W. 2d 630

Opinion delivered February 14, 1955.

[Rehearing denied March 14, 1955.]

*Morrison & Matthews,* for appellant.

*Jack Holt, John F. Park* and *H. B. Stubblefield,* for appellee.

GRIFFIN SMITH, Chief Justice. Two consolidated causes present distinct but closely related issues.

J. O. Dockins, a resident of Little Rock, conditionally agreed to buy certain lands in Lonoke county. Because, as he thought, a merchantable title was not tendered, notice was given that the deal would not be completed.

E. B. and Gus Orlicek, as owners of 963 acres, originally intended to sell the entire tract for $72,225. With this idea in view they listed the property with Paul H. Spikes, a Little Rock realtor. The contract is dated January 7th, 1954 and fixes an agent's commission of ten percent. Dockins made a counter offer March 5th, transmitted through Spikes, in which he agreed to pay $43,600 for 640 acres, providing the offer should be accepted within twenty-four hours. A further condition was that the purchaser should have possession and be in a position to assume operations within fifteen days.

Dockins deposited $1,000 with Spikes as earnest money, to be forfeited if he should default, but applied as principal if the deal succeeded.

The offer was accepted March 6th. Because of mortgage obligations substituted liability or payment had to be arranged. Dockins deposited $17,830 with Little Rock Abstract Company. As purchaser Dockins preferred title insurance, and $230 of the deposit was intended as payment of premium on a certificate he expected the Abstract Company to procure.

In addition to other obligations the Orliceks owed Continental General Life Insurance Company more than $25,000, secured by the Lonoke county lands. Slight default in the payment of principal maturities had occurred, but there is no suggestion that foreclosure had been threatened. The company, however, was anxious to improve its collection records, and upon examination of Dockins' financial statement it agreed to loan him $25,000 or permit his assumption of this amount of the Orlicek indebtedness. In his offer of March 5th Dockins had estimated the assumption to be $22,500. The differ-

ence of $21,100 was to be paid "in cash or trade." The increase of $2,500 in the debt assumption was a mutual arrangement.

Disagreements occurred when title examiners ascertained that the land was subject to a reservation of mineral interests. The litigation that followed resulted in the court's refusal to direct Dockins to specifically perform. There was a decree in Dockins' favor for the money he had posted, and in favor of Spikes for a commission of $4,160. The court's jurisdiction was challenged.

In Case No. 567, wherein Dockins was plaintiff below, judgment was rendered against Little Rock Abstract Company for the return of $17,830 and against Spikes for $1,000. In this proceeding Dockins had caused process to be served on the Orliceks and their wives in Lincoln and Lonoke counties. These defendants promptly moved to dismiss as to themselves for want of equitable jurisdiction.

Dockins' complaint against the abstract company and Spikes was filed April 5th. The Orlicek motion to dismiss was filed April 21. On May 3d the Orliceks, in an independent action in Pulaski chancery court, sued Dockins for specific performance and made Little Rock Abstract Company party to the action. The adverse decree is a part of the record in No. 615 here. Dockins' answer of May 7th denied that the Orliceks were able to deliver "a good, clear, or marketable title" to the 640 acres. In a cross-complaint he asserted that Little Rock Abstract Company and Paul H. Spikes were necessary parties to the action (a) by reason of the deposit in escrow of $17,830 with the abstract company, and (b) because of the earnest money held by Spikes. There are a number of other pleadings. All appear in Chancery No. 99747 (our No. 567) or Chancery No. 99945 (our No. 615). On May 19th the various causes were consolidated by the trial court. The order was approved as to form by appellants' attorneys. On this same day the Orliceks filed their reply to Dockins' cross-complaint, and Spikes

answered and cross-complained. In substance Spikes contended that as agent for the Orliceks he had produced a purchaser able, ready, and willing to buy, and therefore was entitled to his commission.

When the several causes were consolidated the court had not passed upon assertions of the Orliceks that the Pulaski tribunal was without jurisdiction. However, when Dockins' suit against the abstract company and Spikes was tried May 19th it was stipulated that the Spikes cross-complaint should be continued, "and the court reserves jurisdiction of that part of this cause for a hearing in June." In the decree of May 28th directing Spikes and the abstract company to return the two deposits to Dockins the motion to dismiss was overruled. Exceptions were saved by appellants. At a later period these litigants renewed their motion to defer action on the Spikes cross-complaint "until these defendants are legally brought into court."

On July 29th appellants' motion to transfer to circuit court was overruled. But on the previous day the Orliceks filed their amended and separate answer to Spikes' cross-complaint. They alleged that Spikes as agent had negligently handled the transaction and asked judgment for $5,196.80.

Following rendition of the last decree a final stipulation was that [in spite of the consolidation order] Chancery Causes 99747 and 99945 involving Dockins against the Orliceks upon the one hand and Spikes against the Orliceks upon the other, the causes had been tried separately. The parties jointly petitioned this court to consolidate all actions, and this was done.

I. Shortly after accepting Dockins' offer to purchase, the parties agreed that the relationship of landlord and tenant for the 1954 crop years would be mutually beneficial, and to this end a memorandum of what the formal contract should be was drawn. This arrangement is without significance here except to identify contentions of the Orliceks that the court erred in holding that full performance of the purchase agreement, with

delivery of deed to an unimpaired title, had to be completed within the period of fifteen days. It is not disputed that Dockins expected to close the deal within that period. In making the offer he had called attention to the season's progress with the attending necessity for quick farming operations. Sensing this need for immediate possession Dockins had at first put a time limit of ten days from March 5th, but acquiesced in fifteen.

During the time thus allowed Dockins made a number of visits to the farm, provided a pump point for one of the wells, and in all respects dealt with the Orliceks as though the sale had been completed. But on March 22d Dockins was informed by the abstract company that the property was burdened with a one-fourth interest in minerals. The Orliceks insist that they did not know that the reservation existed. Secondarily, it is urged in their behalf that title to the land was, in fact, good, but that the purchaser had a right to a reduction in price proportionate to the decrease in market value by reason of the mineral interest; or, he should have required the Orliceks to acquire the minerals.

Attention is directed to the fact that after Dockins ascertained the vice he offered to pay $48,600 for the property *and* the half section the Orliceks owned. But it is not contended that after March 22d he receded from the position that his purpose to become sole owner under an unimpaired marketable title was defeated when the mineral cloud appeared. And it seems quite clear that the time element was a primary consideration, otherwise the fifteen-day limitation would not have been dealt with so explicitly in the offer and acceptance.

It was shown that the mineral reservation gave the owner a right of ingress and egress; to use so much of the surface as might be necessary to prospect for, develop, and remove any such commodities that might be discovered, and to this end heavy machinery could be utilized. But, it is insisted, there has been no oil prospecting in Lonoke county since 1935, and the probability

that such will occur, or if it should that Dockins would be inconvenienced, is negligible.

We do not think that a merchantable title was tendered. It is conceivable, but highly improbable, that wildcat oil or gas prospecting might start at any time and be pushed in a way to seriously handicap rice culture. Indeed, there was testimony that oil drilling machinery transported across irrigated lands would cause heavy damage. So, in the circumstances here, we think Dockins had a right to say whether he would accept something he had not bargained for and certainly did not foresee.

II. The Chancellor correctly retained jurisdiction. The Orliceks invoked equity's aid when they sued for specific performance. Dockins' cross-complaint made Spikes a party to that suit, and in less than a week the consolidation order was entered. Whether an *in personam* judgment against the Orliceks on the process served upon them in Lonoke and Lincoln counties by Dockins could be sustained—an action that was finally merged with others—need not be decided. They were in court when Spikes procured his judgment.

III. A point of contention is that the commission was not earned, since the sale was not finished; and, say appellants, ''Spikes cannot claim that in the person of Dockins he procured a purchaser who was willing to accept the contract without conditions.'' The argument is that the agent, who prepared the contract, proposed for the owners merely to sell the interest—whatever that might be—that the Orliceks had in the farm. A theory orally advanced would preclude recovery because by express language of the contract Spikes was to have ''the sole and exclusive agency of *sale* for said property for a period of six months.''

Should doubt exist that the Orliceks and Spikes had in mind the procurement of a purchaser ready, willing, and able to buy upon acceptable terms, that doubt is dissipated by the suit for specific performance. After mentioning the offer made March 5th and accepted the following day, appellants refer to their warranty deed de-

posited with the abstract company, the participation of their wives in the sale, and assert that insofar as they are concerned all things necessary had been done, and that Dockins was equally bound with them. Since Spikes was their agent with authority to make the sale, and since they expressly affirmed that as the result of his negotiations a purchaser was found who should be required to specifically perform, it can hardly be said that appellants did not treat the transaction as a consummated sale.

Affirmed.

Mr. Justice HOLT did not participate in the consideration or determination of this case.