Burns *v*. Meadors.

5-837                                          287 S. W. 2d 893

Opinion delivered February 20, 1956.

[Rehearing denied April 2, 1956.]

*Rex W. Perkins* and *Hardin, Barton, Hardin & Garner,* for appellant.

*Jameson & Jameson,* for appellee.

Paul Ward, Associate Justice.   Appellees, O. D. Meadors and his wife, instituted this action against appellant, Lavada M. Burns, asking a rescission of a contract under the terms of which appellees agreed to purchase certain lands belonging to appellant and asking for damages, and, in lieu thereof, for damages to compensate for defects in the title.   The issues were tried and judgment was rendered in favor of appellees, on the basis of a rescission and damages.   From a decree in favor of appellees appellant prosecutes this appeal.

The complaint alleges that a written contract was entered into on December 1, 1951, whereby appellant agreed to sell and appellees agreed to buy approximately 415 acres of land for the total purchase price of $6,000 and that $4,000 had been paid to appellant under said contract; that the contract required appellant to deliver an abstract of title showing good title vested in her; that the description of the lands contained in the contract and in the deed proffered by appellant was indefinite and uncertain, and that a survey is necessary to obtain a definite metes and bounds description; that a deed to one-half of the mineral rights in and under said lands was outstanding; that when appellant delivered the abstract and the deed they showed appellant did not have a marketable title for the reason that the description was indefinite and uncertain and for the reason that an undivided one-half interest in the mineral rights was outstanding and that they immediately notified appellant of this situation; that they are entitled to be reimbursed for the $4,000 purchase price already paid and for the amount for which they had increased the value of the land while they were in possession thereof, or in the alternative, if a rescission should not be granted that they be awarded damages for the amount necessary to procure a definite description and the outstanding mineral lease.

Appellant entered a general denial and further stated: she admits that she did agree to sell appellees said lands for the price stated but subject to the reservation of the one-half interest in the mineral rights and that this fact was well understood by appellees at the time the agreement was entered into, and; it was an oversight of the draftsman of the contract and the deed that the reservation of the mineral rights was not included therein. Also, by way of cross complaint, appellant admits receipt of $4,000 and states that appellees delivered to her a check for the balance of the purchase price, and that this check could not be cashed because of insufficient funds, and prayed for judgment in the amount of said check.

After hearing the testimony the chancellor made the following findings: After appellees had delivered a check for the final payment to appellant they stopped payment thereon because they learned, after examination by an attorney, that the title to said lands was not good; appellees demanded of appellant that she make and convey to them a good title but that appellant refused, claiming that the proffered title was good; that the title offered by appellant to appellees was not a good title for the reasons that (a) the description of the land in the deed and abstract was indefinite and void and (b) appellant did not have title to an undivided one-half interest in the mineral rights; that appellant's failure to proffer a good title constituted a breach of the contract although appellees had performed all obligations imposed upon them by the contract, and; that appellant should be required to pay to appellees the sum of $7,011.86, including the $4,000 which appellees had paid on the contract and $623.83 interest thereon, taxes paid on said lands by appellees, the cost of abstracting paid by appellees, and $2,500 for enhancement in value of the land due to permanent improvements placed thereon less $300 which appellees had received for a water tank.

After a careful consideration of the entire case we have reached the conclusion the chancellor was correct in holding that appellees were entitled to a rescission of the contract to purchase. We base this decision on the fact that the description contained in the deed proffered by appellant to appellees was indefinite.

Since we base our decision on the ground above stated it is not necessary for us to pass upon two other questions which have been raised, viz.: (a) Appellant sought to reform the written contract to show that appellees agreed to take the land subject to an outstanding lease for one-half of the mineral rights, and; (b) appellees contend that the title was not marketable because of the outstanding mineral lease.

Although the deed itself does not state the exact number of acres to be conveyed the best obtainable esti-

mate indicates approximately 415 acres. The description of the lands in the deed which appellant delivered to appellees contains 13 parcels of land some described by metes and bounds, and the entire description covers three pages as it is copied in the record. We will call attention to the descriptions in some of these parcels which we consider indefinite.

1. "the Northeast quarter of the Southeast quarter of Section 13, (save and except lots and parcels aggregating 2 acres, more or less, out of the South West corner of said tract; conveyed by deed of record prior to the 15th day of April 1918, containing 38 acres, more or less."

2. "the Southeast quarter of the Southeast quarter of said Section 13 (save and except lots and parcels aggregating 16 acres, more or less, off of the West side of said forty acre tract and conveyed by deeds prior to the 15th day of April 1918, containing 24 acres herein, more or less."

3. "also a part of the Southeast quarter of the Northwest quarter of said Section 13, Township 13 North, Range 30 West, described as follows: Beginning at the North East corner of said forty acre tract, and running, thence South 670 feet; thence in a northwesterly direction 420 feet to the South East corner of a lot deeded to A. N. Cole; thence in a Northeasterly direction 210 feet; thence in a Northwesterly direction to the East line of County Road known as the Fayetteville and Van Buren Road; thence in a Northeasterly direction bordering on the East line of said road to the North line of said 40 acre tract; thence East to the beginning point, containing 8 acres, more or less."

4. This description purports to convey a part of the Northeast quarter of the Northeast quarter, Section 24, Township 13 North, Range 30 West, save and except that part lying South and West of the old Fayetteville and Van Buren public road. Then follows these three exceptions: (a) "The lots embraced in the First Division of Winslow Park"; (b) "Two lots and 13 feet of additional

frontage adjoining said lots and having the same depth in the Second Division of Winslow Park heretofore conveyed to Mrs. Caldwell McFedden,'' and; (c) "A parcel of land adjoining the First Division of Winslow Park but not a part thereof, heretofore sold to James A. Ward, Jr., comprising about one-third of an acre.''

An examination of the above copied descriptions reveals that it is necessary to refer in many instances to other conveyances. It will be noted that in no instance is the book and page indicated where the conveyance may be found, and in some instances neither the grantor nor the grantee is mentioned, nor is the exact date of the conveyance indicated.

We are cognizant of the well established rule that a description is good if it contains a key by which it may be made good, but in this case we are forced to conclude that the descriptions copied above contain no such key. We are forced to this conclusion for the reasons set out hereafter. First, it is certain that appellant has introduced no evidence to show that the description contained in the deed can be made definite and certain by referring to the records, and she made no request for time and opportunity to do so. Second, the chancellor being confronted with the lack of evidence to show a definite description appointed a Master to see if a definite description could be obtained. The Master's report shows that he made an examination of the records in the recorder's office and was still unable to obtain a description. Appellant had ample opportunity to cross-examine the Master but did not do so, and she entered no objections. Under these circumstances and under the facts as shown by the record we must conclude that the chancellor was justified in finding that appellant had not furnished appellees a marketable or merchantable title due to the defects in the description of the lands, and to that extent he must be affirmed.

In assessing damages in favor of appellees the trial court rendered judgment in favor of appellees in the sum of $7,011.86. A careful review of the entire record con-

vinces us that this judgment for damages should be reduced by $1,600, leaving judgment in favor of appellees in the amount of $5,411.86.

The record in this case is lengthy and it is impossible to determine to a mathematical certainty what damages appellees have suffered, but we are thoroughly convinced that a reduction in the judgment to the extent above mentioned is justified. There are several grounds upon which we base this conclusion.

The total number of items of damages allowed by the chancellor totals $100 less than the judgment rendered. Appellees disposed of a large water tank on the premises and arbitrarily fixed the value at $300 which the court accepted. We note that appellees' own witness stated that the tank was worth $750. The trial court correctly held that appellees' damage for improvements placed on the property would be the amount they had increased its value. Pursuant to this ruling, appellees undertook to prove the value of the premises at the time of the trial. Appellee Meadors testified that the premises were worth $12,000, thus placing the enhanced value at $6,000. This was so unreasonable in the face of the testimony that the chancellor correctly refused to accept this figure. Appellees introduced George D. Kennick, a cattle raiser and real estate man, to prove the enhanced value of the land. This witness' testimony, however, is inconclusive and must be discounted to some extent. The essence of Kennick's testimony was that as a former appraiser of farm lands for the U. S. Government he would approve a loan on this farm for $5,000, and stated that the value in his judgment would be something less than twice that amount, or approximately $10,000. He made this estimate of the value of the farm from a somewhat casual examination just before the trial. He was not at first allowed to say what value he would have placed on the farm as of December 1, 1951, since the value as of that date was fixed by the court to be $6,000. Without this information there is no way of knowing to what extent the witness thought the farm had been enhanced in value

by reason of the improvements placed thereon. On cross-examination he was asked: Q. "Taking the tract as a whole, the whole 400 acres, can you give us your opinion as to its value in December 1951?" A. "I don't believe I can because I wasn't over it all in '51, we just went over it all, didn't go over it all yesterday but went over most of it, we could drive, but I never got out of the car but about once because it was bad weather up there." The above answer manifestly throws some doubt on the witness' ability to accurately judge the value of the farm shortly before the trial. Although Kennick was called by appellees to testify to the enhancement in value because of improvements placed thereon, yet it is obvious that he could not do so without knowing what the improvements were. In this connection he was asked if he could give the court some idea as to the value of the improvements and he gave this answer: "I can't answer that because I don't know. Because you have got to measure that land to tell. I could give an estimation of it, if I knew how many acres he had cleared." On the whole it appears to us that the witness did not make a careful examination of the farm, including the improvements supposed to have been placed thereon by appellees, and he gave no convincing reasons to justify his estimate that the farm was worth $10,000. Testimony given under these circumstances is subject to evaluation by this Court on a trial de novo. In the case of *Texas Illinois Natural Gas Pipeline Co.* v. *Lawhon,* 220 Ark. 932, 251 S. W. 2d 477, this Court was called upon to evaluate the testimony of certain witnesses as to damage done to land, and we said: "It is true that one or more witnesses for appellee placed the damage at a sum equaling the verdict returned by the jury, but the cross-examination of these witnesses failed to show any fair or reasonable basis for the opinion." Likewise in the case of *Arkansas State Highway Commission* v. *Byars,* 221 Ark. 845, 256 S. W. 2d 738, where a similar question was involved, this Court said: "Where a witness gives his opinion as to damages, such testimony must be considered in connection with the related facts upon which the opinion is based."

The trial court permitted appellees to introduce a large number of cancelled checks, not to show the extent of enhancement of value but to show that improvements were made. Even for this limited purpose, it seems to us the checks had little evidentiary value. Quite a few of the checks were dated before the contract was executed, and some show they were given for seed and fertilizer. Other checks were given for tools and implements which still were of value to appellees and did not enhance the value of the farm.

In the complaint appellees admit having received $500 for timber cut off the land in question. Appellant should have been given credit for this amount even though no testimony was introduced on that point. The case of *Bonacci* v. *Cerra*, 134 Neb. 476, 279 N. W. 173, announces the applicable rule this way:

"Statements, admissions and allegations in pleadings [upon which the case is tried] are always in evidence for all the purposes of the trial; they are before the court and jury, and may be used for any legitimate purpose."

It is our opinion that, under the facts and circumstances of this case, appellees should not have been allowed to recover $623.83 as interest on the money they had paid on the purchase price. It is true that appellant had the use of this money since the date of payment, but it is also true that appellees had had the use of the farm since the date of the contract to the time of trial, and apparently have possession now. This being true, we think appellees would be entitled to interest only from date of the decree of the trial court. This conclusion appears to be in harmony with the better rule. Pertinent to this question we find this statement in 171 A. L. R. at page 851:

"Where it appears in an action to recover back payments made under a contract for the sale of land which was procured by fraud or duress that the purchaser had possession of the property for all or a part of the time

elapsing after the execution of the contract, the courts seem to feel that it would be inequitable to permit the purchaser to receive interest on the sums paid by him during the period in which he had possession of the property with the corresponding right to enjoy the rents and profits thereof.''

In 55 Am. Jur. 939 under the title "Vendor and Purchaser" and the subtitle "Interest on Payments Recoverable" this statement is made: "If the purchaser has been let into and remains in possession, he is not entitled, it has been held, to interest on the purchase money paid when he seeks to rescind the contract for the vendor's fraud or default." Sustaining the above rule the case of *Robinson, et al.* v. *Bressler, et al.*, 122 Neb. 461, 240 N. W. 564, 90 A. L. R. 600, is cited in which this question was discussed extensively under facts similar to the ones here. The court there, after discussing an allowance of interest by the trial court, made this statement: "There appears to be no occasion for the computation of interest at all up to the time of trial. By their voluntary acts the defendants had possession of the property and plaintiffs had possession of $125,000 of the purchase price which had been paid to them." We think this rule which disallows interest under the circumstances of this case is not only sound but equitable.

It follows from the above that the trial court is affirmed in holding that appellees were entitled to a rescission of the contract, but the judgment for damages rendered by the trial court in the amount of $7,011.86 should be reduced to the amount of $5,411.86, and it is so ordered.

Modified and affirmed.

Justice McFADDIN concurs.

ED. F. McFADDIN, Associate Justice (Concurring). I completely concur with the result reached in this case; but on the matter of the title, I follow a different method of reasoning from that expressed in the majority opinion.

The first question decided by the majority is that the appellees were entitled to a rescission of the contract, because the description contained in the deed, proffered by the appellant to the appellees, was indefinite. To me, the description matter seems immaterial. The fact that the appellees went into possession of certain lands clearly showed that they knew what lands they were getting. It would have been very easy to have caused the lands to be surveyed while the appellees were in actual possession. In short, I think the possession taken by the appellees constituted a waiver of any question of insufficiency of description.

But, I think the appellees were entitled to a rescission of the contract of purchase because the uncontradicted evidence shows that there was an outstanding one-half interest in the mineral rights; that there was nothing in the *written contract* that exempted this one-half outstanding mineral interest; and that the appellants failed to prove by the quantum of proof required in such cases— that is, by evidence clear, cogent and convincing — that the original oral agreement was that half of the mineral rights would not go to the appellees. In *Orlicek* v. *Dockins,* 224 Ark. 593, 275 S. W. 2d 630, there was an outstanding mineral interest which the seller did not tender to the buyer, and we said: ''We do not think that a merchantable title was tendered.'' So, in the case at bar, there was an outstanding mineral interest that was not tendered by the appellant, and thus the appellant failed to tender a merchantable title.

On the reduction of the damages, I thoroughly agree with the majority.