LILLEY v. COPELAND

5-3757                                    399 S. W. 2d 496

Opinion delivered February 28, 1966

*Felver A. Rowell, Jr.,* for appellant.

*Gordon & Gordon; Charles H. Eddy* and *Clark, Clark & Clark,* for appellee.

JIM JOHNSON, Justice. This is a suit for rescission of a deed and includes a third-party complaint.

Appellees W. F. and Minnie Bradford owned property which had been subdivided into building lots and then re-subdivided. This action involves Lot 23 of Bradford's Replat. Appellants Wayne and Lillian Lilley had bought several lots in Bradford's Replat over a period of time. The sale price in each case was $1,100 per lot including sewer facilities. Lilley, a building contractor, would build a house on the lot and obtain an FHA-guaranteed loan for the ultimate purchaser. When the FHA loan was ready to be closed, Bradford would convey the lot to Lilley, who in turn conveyed to the ultimate purchaser. Much or most of the business between Lilley and Bradford was handled through a local real estate man who acted generally as agent for both men.

Lilley wanted to buy Lots 22 and 23, but would not pay $1,100 each for the lots without sewer facilities. Sewers were constructed and the sewer cost was withheld from Bradford's purchase price for the lots.

On March 23, 1960, Lilley contracted to sell Lot 23 to T. J. and Lynn Hilliard. On May 28, 1960, the Bradfords deeded Lot 23 to Lilley and Lilley in turn deeded Lot 23 to the Hilliards on June 4, 1960. The Hilliards later swapped Lot 23 back to Lilley for another house and on August 9, 1962, Lot 23 was conveyed to Clovis and Charlene Copeland.

The Copelands filed a complaint in Conway Chancery Court on June 23, 1963, against Lilley for rescission on two grounds: one, that the house had been built over a public sewer which was a health menace and nuisance, and two, the size of Lot 23 had been misrepresented to them. They prayed, *inter alia,* that Lilley be required to correct the sewer nuisance by moving the sewer line or in the alternative that Lilley be required to accept their tendered deed and repay the Copelands their purchase price. T. J. Bettes Company, the mortgagee, was also sued, the Copelands praying that its threatened mortgage foreclosure be enjoined until determination of this action. Lilley answered and filed a third-party complaint against the Bradfords, alleging that they were the owners of Lot 23 at the time the sewer and the house were built and that if there was any liability to the Copelands, such liability should rest on the Bradfords rather than on Lilley.

The gist of the sewer problem is that the sewer on Lot 23 under the house is above ground, made of a material not considered suitable by the State Health Department, and the house was built right over it. A neighbor on higher property tied into the Copelands' sewer, and shortly thereafter the Copelands were advised by the State Health Department that the sewer was a potential health hazard. Copeland moved his family as soon as the school term was over. This suit

was brought some time later, apparently when foreclosure became imminent.

On the matter of the size of Lot 23, the most recently recorded plat of Lot 23 indicates that the lot is 80 feet east and west and 149 feet north and south, with a 10-foot utility easement on the south and a 21-foot road easement on the north apparently not included within the lot. A later survey reveals that the distance between the two easements is 117.7 feet.

At trial the parties represented were appellants Lilley, appellees Copeland, third-party defendants Bradford, T. J. Bettes Company, mortgagee, and Federal National Mortgage Association, mortgage assignee. In its excellent memorandum opinion, the trial court found that: (1) Lilley was the equitable owner of Lot 23 at the time the sewer was laid, the house built and also when it was conveyed to the Copelands; (2) the Copelands were entitled to rescission; (3) the deed should be reformed to correctly describe the lot as being subject to the easements; and (4) as part of its attempt to restore the parties to their original position, the court made detailed findings favoring various parties on matters such as rents, down payments, taxes, insurance, etc., including providing that the Copelands will have judgment over against the Lilleys for any deficiency judgment resulting in the foreclosure proceedings.

From the decree comes this appeal. Appellants first contend that the finding that appellees Copeland were entitled to rescission as against appellants Lilley is contrary to the law and against the clear preponderance of the evidence.

After finding that the Lilleys were equitable owners of Lot 23 when the sewer was constructed, when the house was built and when the property was conveyed to the Copelands, the court went on to find:

"2) Plaintiffs Copeland are entitled to rescission. Authority for this position against the equitable owner may be found in cases collected in 91 C. J. S., Vendor and Purchaser, § 155.

"Either the defective and dangerous sewer installation or the breach of warranty by reason of the 21 foot easement and the 10 foot easement across the property is sufficient to entitle plaintiffs to a rescission. With regard to the adequacy of the sewer service, this case resembles *Clay* v. *Brand*, 236 Ark. 236, 365 S. W. 2d 256. In this case there appears to be no direct proof of misrepresentation as to the sewer or the fact that the sewer line runs across adjoining property for which there is no easement. Certainly an adequate sewer service is a material factor in the occupancy of city property as was an adequate water supply in the operation of a motel or tourist court in the above case.

"Being evicted from 31 feet of a lot 149 feet deep is a substantial eviction which occurred as of date of delivery of Copeland's deed. Mr. Bradford had dedicated the easement to the City of Morrilton as shown by the plat, and title was in the sovereign at the time of delivery of the deed to the Copelands. See *Wood* v. *Setliff*, 229 Ark. 1007, 320 S. W. 2d 655. Purchasers are entitled to rescind for breach of the covenant of warranty. See *Burns* v. *Meadors*, 225 Ark. 1009, 287 S. W. 2d 893; Jones, Arkansas Titles, § 94."

Review of the authorities and the record before us impels us to the conclusion that the chancellor's findings on this point are in accord with the law and the evidence.

Appellants' second point urged for reversal is that assuming the Copelands were entitled to relief, the trial court erred in finding that appellants Lilley were not entitled to relief against the third-party defendants Bradford.

The trial court based its conclusion here on two fact questions. First, the court found that appellants were the equitable owners of Lot 23 when the sewer line was installed and when the house was built (and also the equitable owners when the house was later sold to the Copelands). We think this is reasonable. This was a credit device. Customarily Bradford deeded lots to Lilley when Lilley was ready to pay for them, which was when Lilley had arranged sale of each lot and the house Lilley had constructed on the lot. The second question was, who was responsible for construction of the sewer? It is undisputed that Bradford paid for the sewer construction, in that the cost was withheld from the purchase price of Lot 23. Other than that, the testimony is in direct conflict—Lilley testified that Bradford was responsible for the construction of the sewer, and Bradford that Lilley was. The plumbing contractor who installed the sewer line, however, testified that he was employed by Lilley and that Bradford had never contacted him on the matter. The state of the record being this, we cannot say that the chancellor's findings are against the preponderance of the evidence.

Affirmed.