STANFORD *v*. SAGER.

Opinion delivered January 12, 1920.

1. SPECIFIC PERFORMANCE—DESCRIPTION OF LAND.—A contract for the sale of land witnessed merely by letters which fail to describe the premises to be conveyed can not be enforced specifically.

2. FRAUDS, STATUTE OF—NECESSITY OF PLEA.—Where a complaint seeking specific performance of a contract for sale of land fails to allege that the contract was in writing, it was unnecessary for the defendant who denied specifically all the allegations of the complaint to plead the statute of frauds specifically, since it devolved upon plaintiffs to show a valid and enforceable contract.

3.  FRAUDS, STATUTE OF—DEMURRER RAISING DEFENSE.—The defense of the statute of frauds may be raised by demurrer to a complaint whose allegations disclose a contract falling within the terms of the statute.

4.  FRAUDS, STATUTE OF—PART PERFORMANCE.—Evidence *held* not to show part performance sufficient to take the case out of the statute of frauds.

5.  FRAUDS, STATUTE OF—PART PERFORMANCE.—Delivery of possession of land before offer had been accepted by owner and acts merely preparatory or ancillary to the agreement did not constitute part performance.

Appeal from Drew Chancery Court; *J. S. Harris,* Special Chancellor; affirmed.

*John Baxter* and *J. T. Bullock,* for appellants.

1.  The check for $500 from Stanford to Ross and the written correspondence constitute the written contract and the court erred in not decreeing specific performance, as there was part performance of the contract which took the case out of the statute of frauds. It is undisputed that Sager placed the lands in the hands of Ross authorizing him to sell for $40 an acre net; that the authority of Ross as Sager's agent was valid and binding, and Sager was notified that $500 cash, earnest money, had been paid and $2,000 was placed in the hands of his attorney to be paid when a proper deed was delivered. Stanford was bound and Lephiew was also bound and should be held to specific performance. 1 Ark. 416.

2.  Only Ross and Stanford have the right to plead the statute of frauds and their conduct and correspondence took this case out of the statute. They had the right to waive the formality of writing out their contracts in full. The part performance took the case out of the statute of frauds. 40 Ark. 390; 36 Cyc. 642, par. 2, and 644-5. Rightful possession as here in the vendee takes the case out of the statute. 30 Ark. 250; 15 *Id.* 312; 26 *Id.* 344; 115 *Id.* 154.

3.  Lephiew can not be considered an innocent purchaser. His corrupt conduct in offering to pay Ross an extra commission and other acts stamp him as acting in

bad faith. On the doctrine of innocent purchaser we cite 80 Ark. 86; 75 *Id.* 228; 105 *Id.* 429; 108 *Id.* 490. The chancellor did not find him to be an innocent purchaser but based his decree on the statute of frauds erroneously.

4. Ross and Stanford waived the statute of frauds, if they could have pleaded it. The statute can be waived. 71 Ark. 302; 96 *Id.* 184; 96 *Id.* 505; 105 *Id.* 638; 32 *Id.* 97; 92 *Id.* 392; 194 S. W. 1032. Appellants are entitled to specific performance and the title divested out of Lephiew and vested in Stanford.

*D. Dudley Crenshaw,* for appellees.

1. The contract was entirely in parol and there was no such part performance as to take it out of the statute of frauds. The contract in the correspondence, etc., is not enforceable, as no adequate description of the lands appears anywhere. 21 Ark. 543; 23 *Id.* 421; 206 S. W. 896.

2. There was no written agreement or memorandum of sale, nor are the terms of sale clear, definite or certain. Elliott on Contracts, § 2291. The terms are not definite nor the description adequate and certain. 70 Atl. 894; Elliott on Contracts, § § 2290, 2294; 85 Ark. 1; 102 *Id.* 697; 144 S. W. 528.

3. The finding of the chancellor that there was no written contract or memorandum of sale to bind the parties should govern this court unless clearly contrary to the weight of the evidence and it is certainly not. 84 Ark. 426; 106 S. W. 201; 129 Ark. 58; 195 S. W. 378.

4. The payment of part of the purchase money is not such part performance as to make an oral contract of land specifically enforceable. 1 Ark. 391; 21 *Id.* 553; 44 *Id.* 334; Elliott on Contracts, § 2301.

5. No bad faith on part of Lephiew is shown and he was an innocent purchaser *bona fide* for valuable consideration paid. The burden was on appellants to show that he purchased with notice. 103 S. W. 609. He was an innocent purchaser, without notice, and in good faith. 19 Ark. 51.

6. The principal as well as the agent was bound, and if void neither is bound. 88 S. W. 385.

7. Appellees rely on the statute of frauds and pleaded it, and did not waive it. 32 Ark. 97; 92 *Id.* 392; 96 *Id.* 104, 505. The statute of frauds is available. 19 Ark. 39; 194 S. W. 1032. On appeal the pleadings will be treated as amended by the proof. 98 Ark. 529; 104 *Id.* 215; 88 *Id.* 363; 76 *Id.* 551. The statute of frauds need not be specifically pleaded. 19 Ark. 23-39; 79 Atl. 86; 101 U. S. 231.

8. The parol contract was not enforceable, as the description was not adequate if it had been in writing. Elliott on Cont., § 2291 and cases cited *supra.* Specific performance is discretionary with the chancellor. 12 Ark. 421, 551; 34 *Id.* 663. A clear case must be made. 34 Ark. 663. The decree is just and equitable and should be upheld.

WOOD, J. George Sager, who resided in Illinois, owned a tract of land in Drew County, Arkansas, consisting of 164½ acres. Sager by letters duly authorized W. C. Ross, a real estate dealer, to sell this land at the net price of $40 per acre.

In one of the letters, of date February 10, 1918, to Ross he said in part: "I will make terms one-half cash, the balance one and two years and would make it three before missing a sale with 8 per cent. interest. I have a man on the place and I have promised him the place for this year not signed up yet. * * * For description and number of section, see E. G. Hammock, attorney. He has all my papers. I have 164½ acres in the place."

In another letter of February 19, 1918, he writes Ross as follows: "In reply to yours of the 15th, I want the renter protected, but if you should make a sale, the tools and one horse on the place are mine. I would not want to leave them to make this year's crop. W. E. Lephiew and I have been trying to trade for some time. I had priced the place to him some time ago for cash $6,000. He made me an offer of $30 an acre. I told him

we could not trade and now he has wrote me again if I will make the price some less we can trade. I will not make it less. When I sent him that price I had an eighty-acre farm contracted for here for that amount of money. It was sold last week. Also received a letter from J. B. Coleman, the man that bought the Wells place, wanting price and terms on my place. I will refer him to you. Do the best you can for me. I will be down in about two weeks.''

After receiving the above letter Ross entered upon negotiations with Dr. J. M. Stanford of Hector, Arkansas, for the sale of the place. Stanford made an offer, the terms of which Ross immediately wired to Sager as follows: ''This offer of terms $2,500 cash, balance to be arranged one, two and three years. If you can accept these terms the place is sold.''

Sager wired in reply: ''Will be in Dermott tomorrow.'' On the arrival of Sager he and Ross agreed orally upon the amount of cash that Sager was to receive for the place and the terms upon which the deferred payments should be made.

It was agreed between Ross and Sager that when the notes for the purchase money were due they were to be taken up at the bank without discount to Sager. After these terms had been arranged which were satisfactory to Sager, Ross informed him that his place was sold. Ross and Sager then went to Judge Hammock, Sager's attorney, whom Sager directed to bring down the abstract to date preparatory to closing the deal. Sager also instructed him to make the deed when the abstract was completed. Sager informed Ross that Judge Hammock handled the whole thing for him.

The terms of the sale agreed upon between Doctor Stanford and Ross were as set forth in the telegram above except that the notes were to draw 8 per cent. interest to be paid annually, and were to reserve a lien on the land. After Sager and Ross had agreed upon the terms for the payments Ross wired Judge Bullock, Stanford's agent, that the deal had been accepted by Mr.

Sager and to forward the money at once. In answer Ross received the following check:

"Russellville, Ark., March 16, 1918.

"Pay to the order of J. T. Bullock five hundred dollars ($500.00).

"J. T. Stanford, M. D.

"To People's Exchange Bank, Russellville, Arkansas.

"One-fifth of first payment, endorsed by J. T. Bullock and W. C. Ross."

Ross then notified Sager and Judge Hammock, his attorney, that he had received the check. Hammock and Crenshaw, attorneys and agents of Sager, informed Ross that the deed had been prepared and would be forwarded to Stanford. Ross wrote to Stanford that the deed had been prepared and forwarded. In the meantime Ross had sent the abstract of title to Doctor Stanford at Russellville to be approved by his attorney. On April 10, 1918, Ross received a letter from Sager in which he states that more than three weeks had elapsed since he was down there, and that he had not heard from any one. Ross replied April 12, explaining that the delay had been occasioned by the failure of the abstracter to complete the abstract, but that it had been completed and forwarded to the attorney of the purchasing party at Russellville, and further stating "if he handles the matter with any dispatch whatever I shall be able to report a close on this transaction within the next week or ten days."

Then follows some correspondence between Ross and Stanford showing that they considered the deal about ready to close, but that the papers had not as late as April 20, 1918, been passed upon by the attorney for Stanford. On that date Ross writes Sager saying: "I think from the appearance of matters in the premises now that I will be ready to close the deal between you and Doctor Stanford within the next few days. I have not heard from him since sending a correction on the title which was asked for by the attorney, but I expect

to receive the papers within the next few days, at which time the matter should be closed. I will notify you just as soon as I have everything in hand to close the deal.''

On May 7, 1918, Ross learned that Sager had sold the land to W. E. Lephiew. On that day Ross wired Sager in part as follows: ''My client put up $500 when I sold him your property as per your order. Money for balance has been ready pending abstract and deed.''

Sager on the 7th of May, 1918, sold the tract of land of 164 acres to W. E. Lephiew.

Stanford and Ross instituted this action in the Drew Chancery Court against Sager and Lephiew for specific performance of an alleged contract between Sager and Stanford for the sale of 164 acres of land which are specifically described in the complaint and for cancellation of the deed from Sager to Lephiew of these lands, and for damages for breach of contract. Demurrers were filed and overruled.

Sager and Lephiew denied specifically all the allegations of the complaint and Lephiew adopted his answer and set up that he was an innocent purchaser for value.

The chancery court found that the contract which plaintiff sought to have specifically performed rested entirely in parol, and that there was no part performance thereof to take it out of the statute of frauds, and entered a decree dismissing the complaint in this respect for want of equity. From which is this appeal.

The facts as above set forth were developed by the testimony of Ross, and they are undisputed.

The chancellor found that Ross was duly authorized by Sager to make the sale of the lands in controversy, and that Ross entered into an oral contract with Stanford for a purchase of the lands. These findings are correct, but they are not sufficient to warrant a decree for a specific performance.

In the negotiations between Ross, as the agent of Sager, and Stanford, the proposed purchaser, it nowhere appears that there was any memorandum containing a description of the lands to warrant specific performance.

Treating all the letters in evidence as constituting the contract between the parties, yet in none of these letters is the land to be conveyed specifically described nor is there any description of the land in the check which Stanford sent Ross and which was cashed by Ross as earnest money.

The appellants contend that this check and the correspondence between Ross and Stanford constitutes the written contract. Conceding this, yet, since the land to be conveyed is nowhere accurately described, the court was clearly correct in holding that the contract could not be specifically performed.

In *Ashcraft* v. *Tucker*, 136 Ark. 447, we said: "Before a court of equity is justified in requiring the specific performance of a contract to convey land, the property must be accurately described. The contract must disclose a description which is in itself definite and certain or one which is capable of being made certain by other proof, the contract itself furnishing the key by which the property may be identified." *Fordyce Lumber Co.* v. *Wallace*, 85 Ark. 1.

Learned counsel for appellants contend that the appellees never pleaded the Statute of Frauds. The appellants declared on an alleged contract for the conveyance of land, setting out what they conceived to be the terms of the contract but without specifically alleging that the same was in writing.

The appellees demurred to the complaint, which demurrer was overruled. The court might very well have decided the cause as it did on demurrer as the allegations of the complaint disclose a contract falling within the Statute of Frauds. See *Izard* v. *Conn. Fire Ins. Co.*, 128 Ark. 433.

The court, however, ruled that the complaint was sufficient and disposed of the cause on evidence adduced on the issues raised by the complaint and answers thereto.

The appellants alleged that the appellee Sager entered into a contract to convey to appellants a certain

tract of land and set up what they conceived to be the facts constituting such contract.

The appellee Sager denied specifically all the allegations of the complaint. This was sufficient to put the burden upon the appellants of proving a contract which in equity entitled him to specific performance. The record shows that in the development of the testimony the Statute of Frauds was in issue. It was treated by the parties as in issue, and the court, it appears, determined the question of specific performance purely on that issue.

Where a defendant in his answer denies making the contract which plaintiff declares on and seeks to have specifically performed, it is not necessary in such case for the defendant to specifically plead the Statute of Frauds, for the reason that it devolved upon the plaintiff to show that he had a valid contract as alleged. See *Wynn* v. *Garland,* 19 Ark. 23; *Trapnall's Admr.* v. *Brown,* 19 Ark. 39.

But if the contract be considered as one resting entirely in parol as the court found, still there was no sufficient part performance thereof to take the case out of the Statute of Frauds. While appellant Stanford testified on his direct examination that he understood that Ross delivered the possession of the land to him, yet his testimony further shows how this was done. He had gone out with Ross to look at the land and while so doing he told Ross that the land suited him all right and made Ross an offer. Ross stated that he would wire Sager the terms and find out whether he would accept the offer or not. Stanford understood that the trade was closed and that all the papers would be executed as soon as they could hear from Sager, stating that he would accept the terms. He then went home and learned through Ross two or three days afterwards that Sager had accepted the terms, whereupon he sent a check for $500. On cross-examination he was asked what steps he took in regard to taking possession of the place and replied, ''I wrote to Mr. Ross to know the name of the tenant on the place as I wanted to get him to do some work.'' He was then

asked, "Did you personally or through an agent go upon any part of this land or receive any rental from its occupation or in any way act as the landlord to the negro tenant?" He answered, "I had no correspondence with the negro." He further testified that he delayed having work done for the reason that he heard that Sager had refused to sign the deed. He said that he understood that the deal was not finished until Mr. Sager accepted the terms.

The above testimony, which is undisputed, clearly shows that no possession in fact was delivered to Stanford, but, even if possession was delivered by Ross to Stanford, such possession was before the terms of Stanford's offer had been accepted by Sager. The acts that were done by the parties as shown by this testimony were merely preparatory or ancillary to the agreement and were not done after the agreement had been entered into. Such acts do not constitute part performance. Pomeroy, Eq. Jur., § 1409.

The trial court, therefore, correctly concluded that there was no such part performance of the contract as would take the case out of the Statute of Frauds.

The decree is, therefore, affirmed.