**O. H. DOOLEY and Dorothea L. Dooley, Plaintiffs,**

v.

**Juanita K. Long WEST, Defendant. No. 488.**

United States District Court
W. D. Arkansas,
Harrison Division.

Nov. 7, 1962.

Len Jones, Eugene W. Moore, Harrison, Ark., for plaintiffs.

Garvin Fitton, Harrison, Ark., House, Mercer, House & Brock, San Antonio, Tex., John G. Murray, Pearsall, Tex., for defendant.

JOHN E. MILLER, Chief Judge.

This case is before the court upon defendant's motion for summary judgment to dismiss the action on the ground that there is no genuine issue as to any material fact based upon the pleadings, depositions and affidavits, and that the defendant is entitled to a judgment as a matter of law.

The plaintiffs filed their complaint, entitled "Petition," in Marion County Chancery Court on December 6, 1961, in which they alleged that they were the owners and in possession of certain described lands, comprising 2,213 acres more or less, 1,280 acres of which were subject to a first mortgage in favor of General American Life Insurance Company of St. Louis, Mo.; that on December 6, 1960, the plaintiffs executed and delivered a warranty deed by which they conveyed the above described lands to Jack West, with a special agreement in which West was to hold title to the lands in trust for them and to give plaintiffs an option to repurchase said lands by repaying amounts of money as paid out by West. A copy of said agreement is attached to the complaint and marked as plaintiffs' Exhibit A.

The plaintiffs further alleged that Jack West, contemplating death, married the defendant, Juanita K. Long during August 1961, she well knowing of this contract made between plaintiffs and her then husband, Jack West; that after this marriage with the defendant and on his death bed in an interview with plaintiffs advised them and his wife, the defendant, to dispose of the above described lands for their mutual benefit.

That the plaintiffs spent much time and expense, and with the advice and consent of the defendant entered into a contract to sell the above described lands to one L. C. Johnson and his wife; that said agreement was approved by defendant in a written statement in the defendant's own handwriting dated November 16, 1961, a copy of which was attached to the complaint and marked plaintiffs' Exhibit B; that in compliance with the agreement and request of defendant, the plaintiffs had a warranty deed prepared according to the request and directions of the defendant, Juanita K. Long West, for her signature; that the plaintiffs caused a mortgage to be prepared in favor of the defendant duly signed and acknowledged by L. C. Johnson and his wife covering the above described lands; and that on November 29, 1961, the plaintiffs attempted to present the signed and acknowledged mortgage and the warranty

deed for defendant's signature, at which time the defendant avoided and evaded the plaintiffs by leaving town and otherwise making herself unavailable to them for purposes of consummating the deal.

The plaintiffs prayed that the court order the defendant to carry out the terms of her contract or that she pay to the plaintiffs damages in the sum of $40,000, $38,000 of which represents plaintiffs' equity in the land and the remaining $2,000 their loss of time, expense, etc.

Petition for removal to this court was duly filed on December 23, 1961.

On January 20, 1962, the defendant filed her original answer which was amended on August 4, 1962, in which she denied the allegations of plaintiffs' complaint. The defendant also alleged that the plaintiffs had failed to state a claim against her upon which relief could be granted; that there was no meeting of minds of the parties as to the terms of the alleged contract, nor were the conditions precedent complied with, and, therefore, there was no contract entered into between the plaintiffs and the defendant or defendant's deceased husband, Jack West.

The defendant further alleged, in the alternative, that the plaintiffs failed to exercise the alleged option upon which they are relying, and thus failed to comply with the terms of the contract upon which they are relying; that the alleged contract is too general, vague and indefinite as to the time of performance and description of the property as well as to other terms; that the alleged contract violates the Statute of Frauds; and that there was a mistake of fact.

On the same date, the defendant filed a counterclaim against the plaintiff, in which she alleged the execution of a promissory note on December 7, 1960, in which they promised to pay her $1,000 within one year after the date of the note, the principal and interest of which have remained unpaid.

On August 9, 1962, the defendant filed her motion for summary judgment on the ground that the pleadings, depositions, and affidavits show that the defendant is entitled to summary judgment as a matter of law and to have plaintiffs' complaint dismissed.

The first question which the court must determine is whether there is any genuine issue as to any material fact within the meaning of Rule 56, Fed.R.Civ.P., and if not, then, whether defendant is entitled to a judgment as a matter of law.

■ In Marion County Co-Op Ass'n v. Carnation Co., (W.D.Ark.1953), 114 F.Supp. 58, aff'd 8 Cir., 214 F.2d 557, this court quoted extensively from a number of decisions of the Court of Appeals for this Circuit relative to various phases of the summary judgment rule. The court will not repeat those quotations here. Suffice it to say that the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, and all doubts must be resolved against him. It is with that rule in mind that the court proceeds to consider the record before it.

A thorough examination of the pleadings and exhibits attached thereto, and a careful study of the depositions of Mr. and Mrs. Dooley, the plaintiffs; Mrs. West, the defendant; Mr. Murray, defendant's attorney; and Mr. Ellis, owner of the Eagle Hotel at Eagle Pass, Texas; together with the exhibits attached thereto, convinces the court that there is no genuine issue as to any material fact in the present case.

The following undisputed facts appear in the record:

Since January 1961, O. H. Dooley has been in the real estate business, and prior to that time he was in the business of buying and leasing cattle ranch land and feeding cattle on the leased land in various states, including Texas. He engaged in this business both as a sole proprietor and in partnership. In 1947 he became acquainted with the deceased, Mr. West, and from the following year until the death of Mr. West the two men engaged in a great number of land-leasing and cattle-buying ventures together,

in which West usually supplied the money and Dooley did the buying and selling. At times Dooley supplied some of the money.

Plaintiff purchased the property in question, located in Marion County, Arkansas, in September 1951 for the purpose of going into semi-retirement and running a nominal number of cattle on it. In 1961 plaintiff's financial condition deteriorated in that he fell behind in his payments on his Arkansas land and owed Mr. West approximately $39,000 for his share of the losses that their partnership had suffered during the drouth years of 1952 to 1956. On December 6, 1960, Dooley and Mr. West entered into an agreement whereby Dooley and his wife conveyed the Arkansas land to West, the consideration being that West would assume the indebtedness on the land and would cancel the debt due him from Dooley. Dooley was given a one-year option to repurchase by payment to West of the money that had been owing West as well as the money paid by West on the indebtedness of the land. This agreement was prepared by Mr. Cox, an attorney in Little Rock who was a stranger to both parties. The General American Life Insurance Company had a first mortgage on the property in question amounting to $18,000, and West had a second mortgage on the property for the amount of the debt that Dooley had owed him since 1955 ($39,000). Plaintiff was never paid any salary by Mr. West, but in December 1960 he borrowed $1,000 from the defendant, the then Mrs. Long, and gave her a promissory note for that amount.

The option agreement between the plaintiffs and the now deceased Jack West was to be exercised on or before December 6, 1961. On June 17, 1961, Jack West deeded the Arkansas land involved in this action to the defendant, who was at that time a single woman. In August of 1961 the defendant married the now deceased Jack West, and on September 15, 1961, Jack West passed away.

Plaintiff talked to Mr. West on September 5, 1961, and on this occasion Mr. West told plaintiff to get rid of the Arkansas land in question and get something out of it for plaintiff and the defendant, Mrs. West.

On October 18 or 19, 1961, plaintiff talked to Mrs. West, the defendant, at her request about the disposition of the ranch in question, which would most likely take the form of a trade. About a week later plaintiff contacted defendant after he had found some property that he could obtain for purposes of trading, which consisted of a subdivision in Waco, Texas, owned by one L. C. Johnson, with the same amount of indebtedness on it as the Arkansas land, which the parties refer to as "the ranch." Mrs. West turned down this proposition.

Plaintiff then went back to Mr. Johnson in Fort Worth to see if he had any other property. Johnson had a commercial building that he would trade, so plaintiff went to Mrs. West with this proposition in November 1961. The next day or so Mrs. West called plaintiff in Fort Worth and told him that she had changed her mind and did not want to look at this building. During this same period, the first part of November 1961, plaintiff went to Mrs. West's home in Pearsall, Texas, to ask her what she was interested in taking for her interest in the Arkansas land, and she indicated that she would take mortgage paper. Plaintiff then went back to Fort Worth.

Johnson told plaintiff that he could obtain mortgage paper, i. e., second mortgages, and plaintiff went back to Mrs. West's home to inform her of this. She indicated that she did not know anything about this sort of paper. Plaintiff asked her what she would take a mortgage on, and she replied that she would accept a mortgage on the land in Arkansas. Plaintiff returned to Fort Worth to see Johnson, who was tentatively agreeable to giving Mrs. West a mortgage on the Arkansas land for her interest in it and trading real property for plaintiff's interest in the Arkansas land. In other

words, Johnson was interested in obtaining the Arkansas land and, if necessary, giving Mrs. West a note and mortgage in payment for it. Plaintiff ran a financial check on Johnson, and reported satisfactory findings to Mrs. West. She indicated that she would be pleased to take a second mortgage on "the ranch," and she agreed on the amount of $40,000 for her interest. She wanted to make sure that the mortgage was good, and plaintiff suggested that the bank attorney in Pearsall, Mr. Murray, would be qualified to pass on that. They went to see Murray a day or two before November 16, 1961. They explained the situation to him, and he indicated that he wanted to talk to the bankers who ran the credit check on Johnson. The next day they returned to Mr. Murray's office, and he told them that a second mortgage properly drawn would be all right. Mrs. West told plaintiff on their way back from Murray's office to see what he could do with Johnson, and plaintiff told her that he would need a statement from her as to what she wanted to do. At her home she wrote out such a statement and signed it.

Plaintiff then went to Fort Worth, and the next day he contacted Johnson in Johnson's office and showed him the statement signed by Mrs. West. At first Johnson was reluctant to go through with the deal, but plaintiff persisted and finally talked him into it.

The agreement finally reached between Johnson and Dooley was that Johnson would give Mrs. West a second mortgage for her interest in the Arkansas land and give the plaintiff, Dooley, what John-son referred to as "junker" property for his interest in the ranch. This "junker" property consisted of rental resident property in Dallas and Fort Worth which was located in the Mexican parts of the cities and had considerable indebtedness, which the plaintiff would assume. In other words, the plaintiff would receive whatever equity there was in this "junker" property in exchange for whatever his equity was in the Arkansas land.

On the next day, November 18, 1961, plaintiff drew up the contracts of sale and trade that plaintiff and Johnson had agreed upon, and took them down to Johnson's office where they both signed them.

Plaintiff left Fort Worth that same day and went to Harrison where he had an attorney, Mr. Len Jones, draw the deed from Mrs. West to Johnson on the Arkansas land and draw a mortgage from Johnson to Mrs. West. Plaintiff telephoned the first mortgagee, General American Insurance Company, and informed it of the trade and asked it to send the abstracts.

The next day, November 21, 1961, plaintiff received from his attorney the deed and mortgage and went back to Fort Worth and got Johnson and his wife to execute the mortgage to Mrs. West. He then took the signed mortgage and note to Pearsall where he showed them to Mr. Murray, who suggested changes to be made in the mortgage before he would consider it acceptable to Mrs. West.

Plaintiff then went back to Harrison to have the changes made, which were made.[1] He then took the revised mort-

---

1. The revised mortgage provides, inter alia:
   "MORTGAGE, WITH POWER OF
   SALE, REALTY
   "KNOW ALL MEN BY THESE PRESENTS:
   "THAT L. C. Johnson and Mary B. Johnson, his wife, for and in consideration of the sum of ONE DOLLAR ($1.00) to us in hand paid, and the premises hereinafter set forth, do hereby grant, bargain and sell unto Jauanita K. Long West, widow, and unto her heirs and assigns

forever, the following property situated in Marion County, Arkansas, to-wit:
   "Section 18; N½ of Section 19, and all that part of the S½ of Section 19 lying North and West of the highwater mark on the South Bank of Little Sugar Creek. Also the W½ of the NW¼, Section 20; and all that part of the W½ of the SW¼ lying North of highwater mark on South Bank of Little Sugar Orchard Creek, all in Twp. 19 N.R. 17 West. SUBJECT TO: a first mortgage in favor of General American Life In-

gage back to Mr. Johnson, surrendered the original mortgage to him, and Johnson and his wife executed the revised mortgage and note a day or so before Thanksgiving, November 23. Plaintiff then went to Pearsall, tried to contact the defendant, Mrs. West, and, failing to do so, then contacted her attorney, Mr. Murray. He said that he would not look at the changed mortgage and note until Mrs. West requested him to do so. This was the day after Thanksgiving, November 24. Plaintiff then went to Murray's office anyway, and there Murray told him that soon after he had been there with the original mortgage,

Mrs. West's nephew, one Zimmerman, had talked her out of the deal and was representing his aunt from then on. Plaintiff called Zimmerman from Murray's office and he came over. At the office Zimmerman informed plaintiff that he did not think that his aunt, Mrs. West, ought to go through with the deal. After this, plaintiff and Zimmerman left Murray's office and met later at plaintiff's hotel. There Zimmerman told plaintiff that he would not o. k. the deal, and that ended the discussion.

Plaintiff did not get a chance to talk to Mrs. West. He went back to Harrison to get his wife, and they went to Eagle

surance Company of St. Louis, Missouri. The principal balance due in a sum of $16,000.00 with interest paid to December 1, 1961. Consisting of 1280 acres more or less.
AND
[Here follows legal description of other lands.]
Consisting of 933 acres more or less. It is understood there is no lien against the 933 acres, except this instrument.
"It is understood that mortgagors, L. C. Johnson and Mary B. Johnson, his wife, agree to furnish Jauanita K. Long West, mortgagee, copy of receipts showing the interest and principal payments to the General American Life Insurance Company of St. Louis, Missouri as they become due annually and abstract copies of the tax receipts as they are paid each year, and on final payment of the General American Life Insurance Company of St. Louis, Missouri. They will keep a like amount of insurance on the property, the same as now payable, as the mortgagee is obligated to pay to the General American Life Insurance Company of St. Louis, Missouri.
"We hereby covenant with the said Jauanita K. Long West, widow, that we will forever warrant and defend the title to the said property against all lawful claims. And I, Mary B. Johnson, wife of the said L. C. Johnson for the consideration aforesaid do hereby release unto the said Jauanita K. Long West, widow, all my right of dower and homestead in and to the said lands.
"The sale is on the condition that whereas L. C. Johnson and Mary B. Johnson, his wife, are justly indebted unto the said Jauanita K. Long West, widow, in the sum of Forty Thousand and No/100 Dollars ($40,000.00) evidenced by a promissory note bearing 5 per cent

annual interest, the interest being due and payable each year. This note and mortgage is subject to a first mortgage due in favor of General American Life Insurance Company of St. Louis, Missouri and this mortgage matures December 1, 1970. Then on December 1, 1970, this note is payable each year in the sum of $2,000.00 plus 5 per cent interest on the unpaid balance until this note is fully paid.
"NOW, if we shall pay said moneys, at the times and in the manner aforesaid, then the above conveyance shall be null and void. And in case of non payment, the said grantee or assignee shall have power to sell said property at public sale, to the highest bidder, for cash, at the South Door of the Court House in the town of Yellville, County of Marion and State of Arkansas, public notice of the time and place of said sale having first been given 21 days by advertising in some newspaper published in said county, by at least two insertions, or by notices posted in ten public places in the County, at which sale the said grantee or assignee may bid and purchase as any third person might do, we hereby authorize the said grantee or assignee to convey said property to any one purchasing at said sale, and to convey an absolute title thereto, and the recitals of his deed of conveyance shall be taken as prima facie true. And the proceeds of said sale shall be applied, first, to the payment of all costs and expenses attending said sale; second, to the payment of said debt and interest, and the remainder, if any, shall be paid to said grantor. We hereby waive any and all rights of appraisement or redemption under the Act of the General Assembly of the State of Arkansas, approved May 8, 1899."

Pass where they thought they could contact Mrs. West. They saw her in the hotel there but she avoided them. They returned to Harrison at the end of November 1961.

One or two weeks later, plaintiff had business in Fort Worth, and he went to see Johnson to tell him that the deal was off. Johnson was angry about this and threatened to sue the plaintiff and Mrs. West. Plaintiff pacified Johnson by telling him that he was going to sue Mrs. West and filed the present suit when he returned to Harrison within the next day or so. Johnson has not brought suit against the plaintiff. Plaintiff has done business for Johnson since then as his real estate agent, and their relationship has been amicable as to these later deals.

In view of these undisputed facts the primary question before the court is whether the statement written and signed by defendant on November 16, 1961, which is marked Exhibit B to plaintiffs' complaint, constitutes a completed binding contract as a matter of law for sale of the real property at issue herein. The legal effect of the option agreement, Exhibit A to plaintiff's complaint, is of subsidiary importance only in the present action.

The statement, which the plaintiffs contend constitutes an agreement to sell on the part of Mrs. West, appears in the following form:

"JACK WEST
"Eagle Pass, Texas
"11–16–61
"Herb Dooley—I have decided to take the $40,000 C 5% Int. with Mr. Johnson assuming the first mortgage against the ranch—to pay me interest only until the first mortgage is paid out—then pay me $2000 plus interest on the principal per year—until mortgage is paid out.
"I want my attorney to pass on all papers before I accept.
"Juanita K. West."

The court in disposing of this question must consider the basic elements necessary to the creation of any valid contract.

That is, does the above stated agreement constitute an offer or acceptance binding on the part of the defendant? Although the court is aware that the substantive Texas law would control the creation of a contract in the present case, Leflar, The Law of Conflict of Laws, (1959) Sec. 122, p. 231, the basic rules governing creation of a contract are common to Arkansas and Texas, as well as to the majority of the other jurisdictions. Therefore, the court will rely on the general rules of contract law to aid in its determination of this issue.

Since the plaintiffs in their complaint do not allege the exact nature of the above stated agreement signed by the defendant, the court will consider it first as an acceptance and then as an offer in light of its wording and the surrounding circumstances.

At first blush the statement as it is worded has the appearance of an acceptance of an offer that had been made by Mr. Johnson. However, the last sentence, "I want my attorney to pass on all papers before I accept," characterizes this statement as a conditional acceptance, or even a counter-offer, rather than as an acceptance binding upon the defendant.

The general rule which states the legal effect of any conditional acceptance is stated in 12 Am.Jur., Contracts, Sec. 53, as follows:

"In order to form a contract, the offer and acceptance must express assent to one and the same thing. The acceptance of the offer must be substantially as made; there must be no variance between the acceptance and the offer. An offer imposes no obligations until accepted according to its terms, without qualification or departure. In order that a binding and enforceable contract may arise out of the doing of an act in consequence of an offer, the act must be done in accordance with the terms and conditions of the offer. The acceptance must be unequivocal and unconditional. If a condition is affixed to the acceptance by the party

to whom the offer is made or any modification of, or change in, the offer is made or requested, there is a rejection of the offer, which puts an end to the negotiation, unless the party who made the original offer renews it or assents to the modification suggested."

In 17 C.J.S. Contracts § 43, the rule is stated as follows:

"* * * an acceptance, to be effectual, must be identical with the offer and unconditional; and where a person offers to do a definite thing, and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is a counter proposal, and in neither case is there an agreement; * * * *"

* * * * * *

"Where an agreement is made subject to the consent of a third party, it must be looked on as a conditional agreement, dependent on such consent being given within a reasonable time, in default of which the agreement must be taken not to have become effective; but where such consent or approval has been given the offeree's formal acceptance of the conditions of the contract is not necessary. A contract made conditional on the approval of the attorney of one of the parties is not effective or operative unless such approval is obtained, in the absence of fraud in withholding approval; but, where parties accept an offer subject to its favorable approval by their attorney, they do not guarantee the attorney to be a competent lawyer, nor do they guarantee his approval on any given state of facts. They are, however, required not to interfere with the securing of his approval."

Therefore it is clear that defendant's written statement of November 16, 1961, did not constitute a valid acceptance of any offer made by Johnson, if, indeed, there had been a valid and definite offer on Johnson's part. The undisputed facts show that not only was Johnson indefinite as to whether he would give Mrs. West, the defendant, a note for $40,000 secured by his mortgage in order to obtain the Arkansas land in question, but when he learned that she had written the above statement, he was reluctant to go along with its terms and did so only after much persuasion on the part of the plaintiff, O. H. Dooley.

On the other hand, should the plaintiffs contend that in the absence of a prior offer on the part of Johnson, the statement in question constituted a valid offer on the part of the defendant, or a counter-offer to any offer that was made by Johnson, they must sustain the burden of showing that the wording of the statement itself was that of a valid offer on the part of the defendant.

An offer is defined in 17 C.J.S. Contracts § 36, as follows:

"An offer is the signification by one person to another of his willingness to enter into a contract with him on the terms specified in the offer, a statement by the offeror of what he will give in return for some promise or act of the offeree. It must be more than a mere expression of desire or hope. A mere statement of willingness to enter into negotiations is not an offer. It is presumed that an offer invites the formation of a bilateral contract by acceptance."

The court is of the opinion that the statement in question did not constitute a valid offer on the part of the defendant, or for that matter a counter-offer, because not only is it worded as an acceptance rather than as an offer, but it is addressed to the plaintiff, O. H. Dooley, rather than to Johnson with whom she was to deal on the Arkansas land, and any deal was to be passed upon by the defendant's attorney before she would even consider accepting whatever Johnson's terms might be, whether they were embraced in an offer or an acceptance. In other words, no matter how the de-

fendant's statement may be characterized, there is a clear reservation of power on her part to withhold acceptance until after her attorney had approved of the transaction as reflected by the documents involved. In the instant case, neither were the final papers passed upon by defendant's attorney, Mr. Murray, nor did the defendant herself accept the final terms.

In this connection, the court is of the opinion that the statement written and signed by the defendant on November 16, 1961, rather than constituting a valid offer, counter-offer, acceptance, or even a conditional acceptance is nothing more than an offer to negotiate. The legal significance of such an offer is stated in 12 Am.Jur., Contracts, Sec. 28, as follows:

"If a proposal is one merely to open negotiations which may or may not ultimately result in a contract, it is not binding though accepted. An invitation to enter into negotiations is not an offer which, together with the acceptance thereof, forms a contract. Such a proposal may be merely a suggestion to induce offers by others. Care should be taken not to construe as offers letters which are intended merely as preliminary negotiations. A general offer must be distinguished from a general invitation to make an offer. Performance of the conditions of the former makes a legally binding contract, whereas compliance with the requirements of the latter involves nothing more than an offer, which may or may not be accepted by the party who issued the invitation therefor."

See, 17 C.J.S. Contracts § 49.

Viewing the negotiations carried on among the plaintiff, O. H. Dooley, the defendant, Mrs. West, and L. C. Johnson, in their entirety, there is no doubt that there never was anything approaching finality or completeness of assent or common intention among these parties which would signify the creation of a binding contract to sell real property. The requi-

site of finality or completeness of assent is stated in 12 Am.Jur., Contracts, Sec. 23, as follows:

"A contract is not made so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations. The law does not make a contract when the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete. A binding contract is not made by a memorandum which shows upon its face that the minds of the parties have not met and that it does not express a completed agreement, but states terms which, if accepted, would be the foundation of further treaty between the parties with reference to essential particulars which, when agreed upon, would form part of a contract."

The requisite of common intention is stated in 17 C.J.S. Contracts § 31, as follows:

"In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and, therefore, no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement, although it is not necessary that all of the terms of the contract be settled by a single act, but the parties may settle on one term at a time, and their contract becomes complete when the last term is agreed on."

In the alternative, assuming that a contract was entered into by the defendant, the next question before the court is whether the contract to sell real property is valid and enforceable in view of the Statute of Frauds.

In deciding whether the Statute of Frauds of Arkansas or Texas governs, the court must look to the Arkansas conflict-of-laws rule, which embraces any of three criteria. Dr. Leflar in his text, The Law of Conflict of Laws, (1959) Sec. 124, p. 239, states that the Arkansas court at different times has referred to the law of the place of making the contract, to that of the place of performance and to the intent of the parties, actual and presumed, as the law governing the validity of a contract subject to the laws of more than one state. Although the contract in question may have been made in Texas and intended to be performed in Texas, yet the fact that the land is situated in Arkansas, the plaintiffs are citizens of Arkansas, and the proposed mortgage and deed were drawn by an Arkansas attorney and intended to operate by Arkansas law, this court is of the opinion that since the Statute of Frauds under both Texas and Arkansas law is worded similarly, no prejudice to either party would occur if this alternative question were to be decided under the Arkansas substantive law which interprets the Statute of Frauds. See, Lanier v. Union Mortgage, Banking & Trust Co., (1897) 64 Ark. 39, 40 S.W. 466.

The Statute of Frauds in Arkansas appears in Ark.Stat.Ann., Sec. 38–101 (1962 Repl.), and is stated as follows:

"No action shall be brought; * * fourth, to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; * * unless the agreement, promise, or contract, upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized."

The general rule which sets forth the requirement of sufficiency of memorandum as to terms of the particular transaction is stated in Perrin v. Price, (1946) 210 Ark. 535, beginning at page 538, 196 S.W.2d 766, at page 768, as follows:

"In the early case of St. Louis, I. M. & S. Railway Co. v. Beidler, 45 Ark. 17, this court held: (Headnote 1.): 'A memorandum of a transaction for the sale of land which does not show the terms and conditions of the sale, the price to be paid and the time for payment is not sufficient to satisfy the requirements of the Statute of Frauds.'

"This rule has many times been reaffirmed by this court. In the recent case of Schuman v. Hughes, 203 Ark. 395, 156 S.W.2d 804, 805, the following receipt or memorandum was relied upon by appellant as enforceable and not coming within the ban of the Statute of Frauds: 'Property taxes. Feb. 16, 1940. Received from Charley Hughes-five-dollars on acct., 1113 W. 9th St. $5.00. Balance, $245.00. W. M. Kaplan.' This court in that case held that it failed to satisfy the requirements of the statute, denied specific performance, and said: 'The receipt or memorandum, supra, may not be relied upon to enforce specific performance of the alleged contract to sell for the reason that it does not embrace the terms and conditions of the alleged sale, the time and method of payment, and, therefore, is not sufficient to satisfy the requirements of the Statute of Frauds, § 6059 of Pope's Digest, and is unenforceable,' and in the same volume of our reports, in Tate v. Clark, 203 Ark. 231, 156 S.W.2d 218, where a receipt or memorandum in the following form was relied upon: 'Little Rock, Arkansas, December 28th, 1940, I hereby accept from B. E. Tate Twenty-five dollars ($25) as down payment on property located at 705 East 5th St., Lots one and two, city of Little Rock, Arkansas. Balance of $425 to be paid when abstract and deed and all records are cleared and O.K.'d by B. E. Tate's atty. (Signed) A. J.

Clark,' this court said: '* * *
The alleged written memorandum of the contract does not embrace all the terms and conditions of the alleged sale without resorting to extrinsic evidence and is, therefore, prohibited by the statute of. frauds and void. Being void and unenforceable for the reason that it is indefinite and uncertain as to the terms and conditions of the sale damages cannot be recovered for a breach thereof.' "

The requirement of adequate description of the land in question as being necessary to constitute a sufficient memorandum is stated in the case of Stanford v. Sager, (1920) 141 Ark. 458, at page 465, 217 S.W. 458, at page 460, in which the court stated as follows:

"In Ashcraft v. Tucker, 136 Ark. 447, 206 S.W. 896, we said: 'Before a court of equity is justified in requiring the specific performance of a contract to convey land, the property must be accurately described; the contract must disclose a description which is in itself definite and certain, or one which is capable of being made certain by other proof; the contract itself furnishing the key by which the property may be identified.' Fordyce Lumber Co. v. Wallace, 85 Ark. 1, 107 S.W. 160."

The same rule was adhered to in Hotopp v. Adair, (1920) 144 Ark. 629, beginning at page 631, 223 S.W. 393, at page 394, in which the court stated as follows:

" * * * The only writings set forth as constituting the contract fall short of compliance with the statute in that the property is not described and no means of identification are furnished. Defects in this respect cannot be cured or supplied by oral testimony. The check signed by Claud Adair, one of the appellees, recites that it was given 'for bonus on house and lot.' This is not sufficient identification, nor does it furnish any means for identification.

"It is alleged in the complaint that the property described therein was the only real estate owned by appellees; but, accepting that as true, it does not follow that the recitals of the check are sufficient to identify it. Even though appellees owned but one piece of property, it does not follow from this language as a matter of law or as a matter of fact that the contract necessarily was intended to describe that particular property. Moreover, the check is not sufficient as a contract for the reason that it does not set forth the terms in any other respect. Before a court of equity will compel the performance of a contract for the sale and purchase of real estate, it must be definite and certain."

In this connection, when the statement signed by Mrs. West is compared with the revised mortgage (Footnote 1) prepared by Mr. Dooley to be signed by Mr. Johnson as consideration for the conveyance of the Arkansas land by Mrs. West, it is apparent that the terms of the transaction and the description of the land in question, as contained in Mrs. West's statement, are insufficient to take her signed statement out of the Statute of Frauds. There is no doubt but that if the statement in question constituted a contract to sell real property, it was invalid for failure to comply with the Statute of Frauds.

A final contention of the plaintiffs is that the defendant, Mrs. West, was obligated to go through with the alleged contract to sell her Arkansas land because she was bound by the option to repurchase which was granted the plaintiff in their agreement to sell the Arkansas land to Mr. West, which was dated December 6, 1960. Plaintiffs' theory is that their arrangement of the sale by Mrs. West of this land to Mr. Johnson in exchange for a second mortgage for the sum of $40,000 constituted payment under the option provisions. The provisions of this agreement are stated as follows:

"AGREEMENT

"This agreement made and entered into by and between O. H.

Dooley and Dorothea L. Dooley, his wife, hereinafter called, PARTIES OF THE FIRST PART, and Jack West of Eagle Pass, Texas, hereinafter called PARTY OF THE SECOND PART, on the 6th day of December, 1960, as follows, to-wit:

"That the Parties of the First Part are on this day, and in connection with this agreement, conveying to the Party of the Second Part, certain lands in Sections 7, 17, 18, 19 and 20, Township 19 North, Range 17 West, and in Sections 12 and 13, Township 19 North, Range 18 West, all in Marion County, Arkansas.

"That the consideration for said conveyance is as follows:

"1. Cancellation of the debt due the Party of the Second Part in the amount of $39,062.87, together with the interest to date in the amount of $1,877.12.

"2. Assume the outstanding indebtedness on said land due General American Life Insurance Company, St. Louis, Missouri, in the amount of $18,000.00, and make the payment to said company in the amount of $7,420.00, due December 1, 1960.

"3. Pay the taxes on said property now due in the amount of $379.-17.

"4. Pay the insurance premium on said property due April 7, 1961, in the amount of $158.93.

"That the Parties of the First Part are hereby granted and by this are given an absolute option to repurchase the said above mentioned property within a period of one (1) year from the date hereof, upon the payment to the Party of the Second Part such of above mentioned sums of money that he has actually paid or has cancelled, as in the instance of the debt and interest mentioned in paragraph numbered 1 above, together with such other sums that might be expended for repairs or otherwise up to the time of the exercise of said option, plus interest thereon at the rate of six per cent (6%) per annum.

"Witness our hands and seals on the day and year first above mentioned and set forth.

"/s/ O. H. Dooley

O. H. DOOLEY

"/s/ Dorothea L. Dooley

DOROTHEA L. DOOLEY

"PARTIES OF THE FIRST PART

"/s/ Jack West

JACK WEST

"PARTY OF THE SECOND PART."

Granted that Mrs. West, having been conveyed these lands by Mr. West prior to his death, within the option period, was obligated to reconvey these lands to Mr. and Mrs. Dooley if they should exercise their option as provided by the agreement, nevertheless the option terms clearly contemplate repayment to Mrs. West a sum of money greater than $48,-000, not of a second mortgage or even a first mortgage as security for a promissory note in the amount of $40,000. Therefore the plaintiffs did not satisfy the terms of the option within the option period by arranging the sale of the lands in question by Mrs. West to Mr. Johnson in exchange for his second mortgage.

Thus the court is convinced, in view of the undisputed facts and rules of law heretofore set forth, that the written and signed statement of Mrs. West, the defendant, neither constituted a valid offer or acceptance upon which a binding contract or sale of real property could be sustained, nor, in the alternative, did the statement constitute a valid contract to sell real property for failure to satisfy the Arkansas Statute of Frauds.

Therefore an order is being entered today granting the motion for summary judgment and dismissing the plaintiffs' complaint.