## BLACK *v.* BASKINS.

### Opinion delivered May 13, 1905.

1. REFORMATION—MISTAKE.—Where A, owning two adjoining forty-acre tracts, conveyed one of them to B, who mistakenly supposed that he was purchasing the other tract, and the evidence tended to prove either that A knew that B was mistaken, but allowed him to go into possession and make valuable improvements, or that A himself was also mistaken, in either case equity will reform the instrument as against A, or any one else holding under him with notice. (Page 386.)

2. SAME—LACHES.—Delay for four years before bringing a suit to reform a deed against one who purchased the land involved with notice of plaintiff's rights did not constitute laches if defendant was not misled or injured by such delay. (Page 389.)

Appeal from Conway Circuit Court, in Chancery.

JEPTHA H. EVANS, Judge, on exchange of circuits.

Affirmed.

*F. N. Bruce,* for appellant.

Appellee was never the purchaser of the lands in controversy. Nor was he entitled to a reformation of his contract, there being no mutual mistake. 24 Am. & Eng. Enc. Law (2d Ed.), 648-9 650; 39 Ark. 304; 80 Fed. 46; 43 N. E. 259, s. c. 146 Ind. 322; 50 S. W. 62; Bish. Cont. § § 707-8; 142 U. S. 417; 66 Ark. 155; 50 S. W. 62. Laches would bar any such relief if appellee was really entitled to it. 24 Am. & Eng. Enc. Law (2d Ed.), 656-7; 18 *Ib*. 656; 43 N. E. 263, s. c. 146 Ind. 322; 19 Ark. 16. Where, owing to a mistake, the minds of the parties never really met, and no contract resulted, no information can be had. 24 Am. & Eng. Enc. Law (2d Ed.), 618 *et seq;* 114 Fed. 395. Appellant had a right to and did rescind. 64 Ark. 228; 38 Ark. 174. Appellee is estopped by his acts and silence. 11 Am. & Eng. Enc. Law (2d Ed.), 424 *et seq.;* 96 U. S. 544; 39 Ark. 131; 50 Ark. 116; 113 Mo. 257; 160 Mass. 111; 59 Ill. 470; 47 S. W. 153; 86 Am. Dec. 406; 47 Am. Rep. 394; 73 Mo. 310; 50 Ark. 116. The laches of appellee bars him. 145 U. S. 368; 91 U. S. 587; 116 U. S. 33; 56 Ark. 485; 18 Am. & Eng. Enc. Law (2d Ed.), 100, 101, 103, 104, 105, 126; 4 Am. & Eng. Dec. Eq. 280; 160 Ill. 563; 146 Ind. 322; 28 N. J. Eq. 467; 87 Ia. 686; 82 Fed. 396; 53 N. W. 118; 2 Md. Chy. 232; 19 Ark. 16.

*Carroll Armstrong,* for appellee.

Appellee was entitled to reformation. 50 Ark. 179; 51 Ark. 390; 71 Ark. 619. Appellee is not estopped. 65 Ark. 278. Appellant was a purchaser for a grossly inadequate sum, in bad faith, and with full knowledge of appellee's title; and is entitled to no protection. Bisph. Eq. 219.

RIDDICK, J. This is an appeal from a decree of the Conway Circuit Court establishing the right of the plaintiff to a certain forty-acre tract of land, and divesting the title thereof from the defendant and vesting it in the plaintiff, Baskins.

The facts, briefly stated, are that one Coblentz was the owner of a tract of land in Conway County, which he sold in small tracts to different parties at different times. The parties to whom he sold seem to have been more or less ignorant of the locations of these different tracts, and in taking possession thereof a number of mistakes were made by them whereby they took

possession of land not purchased by them. Among the parties who purchased from Coblentz was a negro named Perry. Coblentz agreed to sell him the northwest quarter of the southeast quarter of a certain section for the sum of $200. Upon this contract he by mistake took possession of the northeast quarter of the southwest quarter of the same section and cleared land and made other improvements thereon. Perry failed to pay for the land, and Coblentz sold the land to Baskins, the plaintiff in this action, for $280. In executing the bond for title Coblentz described the land as he had described it in the bond for title to Perry. But Baskins testified that he knew nothing about the numbers of the land, and in making the purchase he told Coblentz that he wanted to buy the Perry tract, meaning the tract of which Perry had possession, and that he understood that Coblentz sold him that tract. Baskins says he called the attention of Coblentz to the fact that Perry was still in possession of the land, and Coblentz informed him Perry was intending to move to the Indian Territory, and would give possession. Perry did give possession, and Baskins took possession of the land that he had purchased, and built a house, cleared land and made other improvements upon it. After he had been in possession about four years, and had paid all of the purchase money except $61, Coblentz sold the land to Black, the defendant, who induced the tenant of Baskins to attorn to him, and he got possession of the land in that way.

It is not disputed that Black, at the time he purchased this land from Coblentz, knew that Baskins was in possession claiming to have bought the same from Coblentz. There is no dispute about the fact that Baskins took possession of the tract that he intended to buy. He bargained for the Perry land, and took possession of the tract from which Perry removed. He agreed to pay $280 for this forty-acre tract, and paid all except $61, which he tendered, and Coblentz refused to receive it because he had then sold the land to Black. Black purchased the east half of the southeast quarter of the section, and obtained a deed from Coblentz to it for the sum of $100, whereas Baskins had paid over twice as much for half of this same land. This tends to show that Coblentz sold this Baskins tract to Black for a nominal price in order to get him to buy the other forty-acre tract. As Black

had actual notice of Baskins's purchase, he is in the same position that Coblentz would have been had the land never been sold. So the main question in the case is whether the facts are such as entitled the plaintiff to any relief against the heirs of Coblentz. It is admitted that Baskins thought he was buying the land which he now claims, but counsel for Black contend with much force that, although Baskins made a mistake, it was not a mutual mistake, or one that was shared by Coblentz, who prepared the title bond. But the chancellor has found that the mistake was mutual, and the evidence tends to sustain the finding. Perry, one of the witnesses introduced by the defendant, Black, and who first purchased this land from Coblentz, notified Coblentz that he had taken possession of the wrong tract, and Coblentz replied that it made no difference, as he could go ahead and pay it out, and that when he came to make the deed he would change the numbers of the land. The evidence shows that there was little if any difference in the value of the two tracts, and the testimony shows that, after Coblentz discovered that Perry had taken possession of the wrong tract, he told him to go ahead and pay it out, and he would make him a deed to the land of which he had taken possession and improved. Now, this was before Coblentz sold the land to Baskins. When Perry failed to pay for the land, Coblentz offered to sell it to Baskins. Baskins told him that Perry was in possession of it, and Coblentz replied that Perry intended to leave, and would give possession. Baskins testified, and the evidence shows clearly, that in making the trade he and Coblentz had reference to the land of which Perry had possession. As we have before stated, the testimony of Perry shows that Coblentz prior to the sale to Baskins had been told that Perry had made a mistake, and had not improved the tract that he purchased. Baskins knew nothing of the mistake that Perry had made in taking possession of the land, but Coblentz did, and he must have understood Baskins, when he offered to purchase the Perry land, as referring to the tract of which Perry had possession. and of which, at the request of Coblentz, he gave Baskins possession. This testimony justified the chancellor in finding that Coblentz agreed to sell Baskins the tract of which he afterwards took possession, and which is involved in this action, and that by mistake Coblentz inserted a description of another tract in the bond for title which he executed.

But if we should concede that the testimony shows that Coblentz really intended to sell Baskins the tract which he described in the bond for title, we are not sure that he and his heirs would not now be estopped to allege or show such to be the fact. Coblentz actively induced Baskins to purchase the tract of land of which Perry was in possession. The testimony shows that Baskins was not informed as to the location of the land, except that Perry was in posession of it. He knew nothing of the fact that there were two Perry tracts; one which Perry contracted to buy, and the other of which he actually took possession. This last tract was the land that was known to the public as the Perry tract, whereas no one except Coblentz and Perry knew that Perry had agreed to purchase a different tract. With this knowledge in his breast, Coblentz agreed with Baskins to sell him the Perry tract, both parties speaking of it as the tract of which Perry had possession and Coblentz assuring Baskins that Perry would give possession without trouble. After Baskins had taken possession of this tract, held it for four years, and made valuable improvements thereon, Coblentz sold it to Black under the claim that he had sold Baskins the other Perry tract of which Baskins had never heard. Having actively induced Baskins to purchase the tract of which Perry had possession, and allowed him to improve the same, his heirs, who represent him, are in no position now to assert that Coblentz did not know that Perry had taken possesssion of another tract than that purchased by him. In making the sale to Baskins he spoke of the land as the one of which Perry had possession, and Baskins relied on the fact that he knew what he was talking about. In other words, he actively induced Baskins to make improvements on this land in controversy, and neither he nor his heirs should now be heard to assert that he was talking about another tract. The value of the two tracts were shown to be about the same, and no injustice is done in allowing Baskins to retain possession of the tract which Coblentz induced him to purchase.

There is another point in the case that deserves some mention, and that is the delay between the purchase by Black and the commencement of this action by Baskins. At the time Black purchased Baskins had a tenant in possession of the land, who afterwards attorned to Black. Baskins seems to have been a

man rather ignorant of the law. As there was not much differ-
ence between the value of the tract that he intended to purchase
and the one which was described in the bond for title, Baskins
first tried to get possession of that land, and, under the advice of
an attorney, he brought an action against the party who held it
under a claim to have purchased it from Coblentz. In a deposi-
tion taken in that action Baskins testified that he did not intend
to purchase that tract, though it was described in the bond. As
another person had held possession of that tract, and had made
improvements thereon while Baskins held possession of the one
in controversy, and for other reasons, Baskins had no right to
recover the other tract, so he dismissed that suit and brought
this action. The evidence shows that he delayed some four
years after Black took possession before he commenced this
action. But it does not appear that Black was misled or injured
in any way by this delay. Black placed no improvements on
the land beyond ordinary repairs and a small house for a crib.
The cost of all the improvements was of less value than the rent
of the place for one year, and he held possession and received
the rents for four years. While Coblentz had died in the mean-
time, still, after considering the matter, we think that, as Black
purchased with full knowledge of the rights of Baskins, if he
has been injured in any way, it was the result of his own fault in
purchasing land that in equity belonged to another, and of whose
rights he had full notice. Baskins was ignorant, and it took
some time for him to inform himself of his rights, and he owed
no duty to Black that justifies him in complaining of the delay.

On the whole case, we are of the opinion that the decree was
right, and it is therefore affirmed.