KROMRAY *v.* STOBAUGH.

4-8308                                    206 S. W. 2d 171

Opinion delivered November 24, 1947.

*Madrid B. Loftin, Wm. J. Kirby, E. Chas. Eichenbaum* and *Leonard L. Scott,* for appellant.

*Fred A. Isgrig* and *Jno. S. Gatewood,* for appellee.

ED. F. MCFADDIN, Justice. This is a three-cornered suit involving a seller and two rival purchasers.

In 1924. A. J. Kempner acquired certain acreage in Pulaski county. In 1943, he caused this acreage to be surveyed and platted into tracts numbered serially 1 to 8, inclusive, of "Blue Hill Subdivision." Kempner obtained blueprints showing the eight tracts. We refer to these blueprints as the "1943 plat." Herewith is a copy of the plat of tracts 1 to 3, inclusive. This plat was

also introduced in evidence, and will be referred to as the "1947 plat."

The plat that Kempner had when he dealt with Kromray and Stobaugh was the 1943 plat which did not

show the location of the old road, the house, well and sheds, as indicated on the 1947 plat. The point is that Kempner, until long after dealing with Kromray and Stobaugh, thought that the north line of his acreage was the road shown on the 1947 plat as "old road," when, in fact, Kempner's north line was the other road shown on the 1947 plat as "gravel county road." The house, well and sheds on tract No. 2 are the only improvements on any of the tracts; and in 1945 the house was occupied by Kempner's tenant, Mr. Lattimore.

In December, 1945, appellant Kromray approached Kempner to buy from him the tract on which was located the house, well and sheds. In their conversation they identified the land as being the tract on which these improvements were located. Kempner (believing his north line was the old road) thought the house was located on tract No. 1, and so interpreted the plat to Kromray. They agreed on the terms of the sale to be a total of $1,000, and Kempner gave Kromray a receipt reading:

"12-3-45

"Received from Ben Kromray $10.00 (ten and no/100 dollars) for part payment for plat #1 containing 10.84 acres of Blue Hill Subdivision. Bal. $990.00 to be paid cash when deed is delivered.

A. J. Kempner"

Kempner assisted Kromray in having the tenant—Lattimore—vacate the house and premises; and Kromray entered into possession in August, 1946, and ever since has been in possession of the house and improvements on tract No. 2, and has made other payments to Kempner.

In September, 1946, appellee Stobaugh, knowing of Kromray's actual possession of the house and improvements, approached Kempner to buy a tract. Kempner told Stobaugh that Kromray had purchased tract No. 1, and Kempner offered to sell Stobaugh tract No. 2 for $955. They agreed. Kempner gave Stobaugh a copy of the 1943 plat, indicating to him on the plat that Krom-

ray's house was on tract No. 1; and Kempner gave Stobaugh a receipt which read:

"September 2, 1946

"Received from J. F. Stobaugh                               $100
          Levy R. 1

one hundred . . . . . no/100 . . . . Dollars For payment on Tract 2 Blue Hill Subdivision as platted by J. J. Jones   Bal. $855.00.   $100.00 add. to be paid then $25.00 per month  6% notes.

A. J. Kempner"

A few days after dealing with Stobaugh as aforesaid, Kempner learned that the house occupied by Kromray was on tract No. 2 instead of No. 1. Kempner then offered Stobaugh a return of his money, which was refused because Stobaugh wanted tract No. 2, which had a frontage of 329 feet on the highway. Kempner then offered to move Kromray's house to tract No. 1, and to bore a well on that tract, if Kromray would vacate tract No. 2. But this was refused by Kromray, because tract No. 1 is hilly and rocky, whereas tract No. 2 is level and tillable.

Then Kempner had an engineer to make a survey of the property. The result was the 1947 plat showing the county gravel road, and also the old road; and this 1947 plat explained how Kempner, confused as to the location of the roads, had thought the house, well and sheds were on tract No. 1, whereas they were actually on tract No. 2. All negotiations for an amicable settlement failing, this litigation ensued. Stobaugh brought suit against Kempner for specific performance of his contract (being the receipt previously copied), and offered to pay the balance in full to Kempner. Kromray, brought in as a party, asked that his contract with Kempner be reformed to describe tract No. 2 instead of tract No. 1, and also offered to pay in full his balance due to Kempner. Kempner admitted his mistakes, offered to return all parties the monies he had received, and pleaded the Statute of Frauds against both contracts. The wives of the parties were joined in the litigation.

The chancery court rendered a decree sustaining Stobaugh's claim, awarding him specific performance against Kempner for tract No. 2, and denying any relief to Kromray. From that decree, both Kromray and Kempner have appealed.

1. *Stobaugh's Claim to Recovery.* Stobaugh was not placed in possession of any of the property by Kempner; and Kempner has pleaded the Statute of Frauds. This statute is found in § 6059, Pope's Digest, and the words thereof, germane to this case, are these:

"No action shall be brought . . . to charge any person upon any contract for the sale of lands . . . unless the agreement, promise or contract upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, . . ."

In an effort to satisfy the requirements of that statute, Stobaugh introduced the receipt which Kempner had executed to him, and which is the only writing held by Stobaugh. That receipt has been previously copied herein. When tested by our cases, it is clear that the receipt is insufficient to fulfill the requirements of the statute. In our recent case of *Perrin* v. *Price,* 210 Ark. 535, 196 S. W. 2d 766, we had occasion to discuss the essentials required of a memorandum to fulfill the Statute of Frauds. Some of our cases are reviewed therein. It may be true, as counsel state, that we have gone further than most courts, to require that all the essential provisions of the contract be in writing in order to satisfy the Statute of Frauds; but at all events, such is our holding, and to it we adhere. Stobaugh's receipt described the property, but failed to state: (1) when the $100 additional would be paid; (2) when the payments of $25 per month would begin; and (3) when interest would begin. The case of *Perrin* v. *Price, supra,* is authority for holding such omissions to be fatal defects. We, therefore, hold that Stobaugh's receipt was insufficient to comply with the Statute of Frauds, and he cannot have specific performance against Kempner. But, since Kempner offered—by stipulation in the record—

to return to Stobaugh all the money which Stobaugh had paid him, we therefore award to Stobaugh a judgment against Kempner for $100 together with interest at 6% from September 2, 1946, until paid.

II. *Kromray's Claim to Recovery.* With Stobaugh's claim disposed of, we come to Kromray's claim. He must not only make good his claim for reformation of the instrument executed by Kempner to him, but also must overcome Kempner's plea of the Statute of Frauds. We treat these separately.

A. *Reformation.* The receipt signed by Kempner, and given to Kromray has been previously copied here. It referred to the property as "tract No. 1"; and Kromray now insists that it should be "tract No. 2." The law is well settled, that to entitle a party to reform a written instrument upon the grounds of mistake, the proof must show beyond reasonable controversy that the mistake was mutual. See *Cherry* v. *Brizzolara,* 89 Ark. 309, 116 S. W. 668, 21 L. R. A., N. S. 508. Other cases enunciating the same rule may be found in West's Arkansas Digest, Reformation of Instruments, § 19. Tested by the rules of these cases, it is clear that Kromray's proof meets the requirements for reformation for mutual mistake.

Kromray testified that he could not read and could only write his name; that he told Kempner that he (Kromray) wanted to buy the tract on which was located the house, well and sheds; that he bought the property entirely by reference to the said improvements and because the land was level; that he could not read the receipt or plat, and relied entirely on Kempner as to the tract number. Kromray further testified that, with Kempner's assistance and approval, he took possession of the tract on which the house, well and sheds were located, and has remained in possession thereof ever since, and that Kempner has accepted payments from Kromray, knowing of the tract he was occupying and claiming. Other witnesses corroborated Kromray.

Kempner was asked about his agreement with Kromray; and these questions and answers appear:

"Q. Now, Mr. Kempner, . . . . did you make an agreement with Mr. Kromray with reference to one of the lots in Blue Hill Subdivision? A. I did. Q. Tell the court what you sold him, so far as your agreement indicated and what you intended to sell him and if there was any mistake, why such a mistake was made. A. When I bought the property, I think it was in 1924, they showed me the line of that property was the cross road by the house; that was the north end of the property; when I sold Mr. Kromray Lot 1 I thought I was selling the lot including the house and well and out buildings. They told me the north line of my line was— Q. How long since you have examined that property? A. Been over it, you mean? Q. Yes. A. I haven't been over it since the day I bought it in 1924."

It is thus clear that it was the intention of both parties for Kempner to sell and Kromray to buy the tract on which were located the house, well and sheds; and that the mistake in describing the tract occurred because: (1) Kempner was confused as to its boundaries, and honestly misinformed Kromray as to the tract number; and (2) Kromray could not read, and relied on Kempner to write the correct tract number on the memorandum. The testimony here is similar to that in *Black* v. *Baskins*, 75 Ark. 382, 87 S. W. 647, in which case the court allowed reformation to describe correctly the tract intended to be sold, and of which possession was actually taken. Kromray is entitled to a reformation of his memorandum, to read "tract No. 2" instead of "tract No. 1."

B. *Statute of Frauds.* We have previously copied the receipt which Kempner gave Kromray in December, 1945. Kempner has pleaded the Statute of Frauds against that memorandum; but such plea is unavailing to him, because he put Kromray in possession of tract No. 2 and continued to receive payments on the purchase price. In such a situation no written memorandum was required, because the possession of the property delivered by Kempner to Kromray, even under a verbal con-

tract, would take the case out of the Statute of Frauds.[1] Such has been our holding since the earliest days of Statehood. *Keats* v. *Rector,* 1 Ark. 391, discusses this point. For the many other decisions holding that possession takes the case out of the Statute of Frauds and allows the contract to be established by parol evidence, see West's Arkansas Digest, ''Statute of Frauds,'' § 129. Kempner's own testimony clearly established that he put Kromray in possession of tract No. 2 in accordance with Kempner's contract to sell the property to Kromray. It is stipuated in the record that Kromray has tendered to Kempner the balance of the purchase price. If follows therefore that Kromray is entitled to specific performance of his contract, and is entitled to receive tract No. 2 by general warranty deed [2] with relinquishment of dower on payment of an amount, which—with that already paid—will total $1,000, the agreed price.

Kempner's absolute frankness and his explanation as to how the mistakes occurred are highly commendable. He expressed every willingness to put the parties in *status quo ante,* and—because the litigation occurred on account of his mistakes, we think the costs of all courts should be paid by him.

The decree of the chancery court is reversed, and the cause remanded with directions to enter a decree and proceed consistently with this opinion.

[1] In Vol. 1, page 269 of the Arkansas Law Review, there is an article entitled "Change of Possession and the Statute of Frauds."

[2] As to the deed being one of general warranty, see *Skinner* v. *Stone,* 144 Ark. 353, 222 S. W. 360, 11 A. L. R. 808, and cases there cited.