RAMSAY, EX'X *v.* ROBERTS

5-3916                                    403 S. W. 2d 57

Opinion delivered May 23, 1966

*John Harris Jones,* for appellant.

*Dickey & Dickey,* for appellee.

GUY AMSLER, Justice. In 1949, Tom I. Steed owned real estate located at 100 Rhinehart Road in Pine Bluff, Arkansas. He leased the property to H. L. McHone under a five-year lease with a five year renewal option. During the life of this lease McHone constructed a one story frame building, 16′ x 36′, on the premises. McHone engaged in the manufacture and sale of ice cream from this outlet. The lease agreement entered into by Steed and McHone is not in the record. However, Steed testified, without objection, that McHone constructed the frame building on the property and that title thereto should pass to Steed unless McHone exercised his renewal option.

In November of 1953, McHone surrendered his

leasehold and sold his business, which carried the trade name "Old Fashion," to Fred J. Ramsay for $12,735.00—part cash and the balance represented by 36 monthly installment notes. McHone executed a duly acknowledged bill of sale (containing a warranty of title) conveying the personal property listed therein located at 100 Rhinehart Road to Ramsay and included therein was "1 one story frame building 16′ x 36′, with concrete floor."

On November 30, 1953, Steed and his wife entered into a five year lease agreement with Ramsay covering "a plot of ground and building forty (40) feet front by fifty (50) feet deep—at the intersection of Rhinehart Road and Pullen Street—belonging to the lessors—." Actually the property was located at 100 Rhinehart Road. There were provisions for a five year renewal and rental adjustments. The agreement also provided that the lessee would make necessary repairs and that title to all improvements placed on the realty by lessee should belong to lessors on termination of the lease.

In July of 1960, Fred J. Ramsay sold the business to appellee Roberts for a consideration of $10,086.50—$1,000.00 cash and the balance in monthly installments of $100.00 with 6% interest. This transaction was consummated through the execution of a sales agreement, chattel mortgage, promissory note and bill of sale. The agreement provided that Ramsay should transfer his lease on the premises at 100 Rhinehart Road and sell to Roberts "all leasehold improvements" thereon together with all merchandise, supplies, machinery and equipment—also good will and the registered trade name.

The chattel mortgage from Roberts to Ramsay and the bill of sale from Ramsay to Roberts covered the 16′ x 36′ frame building that was described in the bill of sale from McHone to Ramsay. A standard warranty of title clause was written into the bill of sale.

Ramsay died on August 17, 1964, and Roberts defaulted on the installments due on the note after Novem-

ber 1, 1964. In August of 1964, a thunderstorm damaged the frame building and sometime thereafter Roberts learned that he and Tom I. Steed both had insurance covering the damage and that Steed claimed to own the building. These two events (Ramsay's death and the fire) transpired about the same time and appellee Roberts testified that he never discussed the breach of warranty question with Ramsay. He did discuss the matter with Ramsay's son-in-law on one occasion but that conversation has no bearing on the issues in this case.

Appellee Roberts continued to carry on business at Rhinehart Road but, being dissatisifed with the status of his purchase from Ramsay, refused to make further payments on the installment note previously executed to Ramsay. On April 1, 1965, appellant filed suit in the Jefferson Chancery Court. She alleged an original indebtedness of $9,086.50 and an unpaid balance of $5,-884.42. She prayed judgment for said amount, interest, attorney's fee, a foreclosure of the purchase money chattel mortgage, sale of the property and for judgment over if any deficiency existed after said sale.

In answer and counterclaim filed by appellee, execution of the documents evidencing the sale and purchase was admitted. Breach of warranty of title was urged as ground for voiding the entire transaction and requiring plaintiff (appellant here) to make restitution of all sums paid by appellee Roberts. An alternative prayer was that the indebtedness still due plaintiff be reduced by the amount of the value of the frame building.

Tom I. Steed was permitted to intervene in the case for the purpose of establishing his title to the building. All parties now seem to concede that Steed did in fact own the building and the Chancellor so found.

On trial the defendant introduced three witnesses and a number of exhibits, representing the instruments signed when the trade was consummated between Roberts and Ramsay and the original lease between Steed

and Ramsay. Appellant offered no oral proof but elected to stand on the written documents signed by Ramsay and Roberts.

The trial court found that Ramsay sold the building to appellee Roberts and warranted the title thereto; that Ramsay had no title to the building, which was of the value of $3,000; that since title failed Roberts' debt to the Ramsay Estate should be reduced in an amount equal to the value of the building and that Roberts should resume monthly payments of $100.00 beginning January 1, 1966. This appeal followed.

Appellant asserts that the four documents (agreement, note, mortgage, bill of sale) must be construed together and that when this is done Roberts "received all that he bargained for." In support of this theory the following cases, and others, are cited: *Gowen* v. *Sullins,* 212 Ark. 824, 208 S. W. 2d 450; *Henslee* v. *Boyd,* 235 Ark. 369, 360 S. W. 2d 505.

No one can gainsay that such is the law. However, a casual examination of the four instruments will readily illustrate that its application offers appellant no consolation or relief. The note and the agreement refer to "leasehold improvements, machinery and equipment." The inventory attached to the agreement lists "1 one story frame building 16' x 36', with concrete floor, located on leased ground at 100 Rhinehart Road." The mortgage and the bill of sale list "1 one story frame building 16' x 36', with concrete floor, located on leased ground at 100 Rhinehart Road." The chattel mortgage executed to Ramsay bound Roberts "to procure and maintain policies of fire and tornado insurance on the mortgaged property to the amount of the insurable value thereof with loss, if any, payable to second party as his interest may appear; and first party also agrees to pay all the taxes and assessments levied upon the mortgaged property as the same becomes due and payable."

We think that the language used is so plain and clear as to preclude any doubt that Ramsay undertook to convey the frame building to Roberts and that Roberts thought he was getting title to it. We have many times said that words in a contract must be given their obvious meaning and interpreted accordingly. *Nakdimen* v. *Brazil*, 131 Ark. 144, 198 S. W. 524; *Connelly* v. *Beauchamp*, 178 Ark. 1036, 13 S. W. 2d 28; *Roth* v. *Prewitt*, 225 Ark. 466, 283 S. W. 2d 155.

It is also a well established rule in this jurisdiction that a contract is construed most strongly against the party drawing it (Ramsay in this case) and most favorably for the other party. *Leslie* v. *Bell*, 73 Ark. 338, 84 S. W. 491; *Marley* v. *Hackler*, 176 Ark. 238, 3 S. W. 2d 20; *General American Life Ins. Co.* v. *Frauenthal & Schwarz*, 193 Ark. 663, 101 S. W. 2d 953.

But, says appellant, even if there was a breach of warranty appellee was not damaged, that he is still using the building and had no intention of moving it off of Steed's land. To assert that Roberts was not damaged because he had formulated no plans for moving the property he contracted for and didn't get is simply begging the question. The trial court found that appellee had been damaged to the extent of $3,000 because title to the building failed and we think such finding is supported by a preponderance of the evidence.

Finally, appellant contends that "want of title in the seller is not a defense to an action for the purchase price where the buyer has remained in possession." This court has consistently held that a purchaser may rescind the contract on breach of warranty or may keep the property and set up such breach by way of recoupment when sued for the purchase price. The Chancellor correctly held that appellee was entitled to do this. *Johnson* v. *Madison Paint Co.*, 170 Ark. 1193, 281 S. W. 358; *Siegel, King & Co.* v. *Penny & Baldwin*, 176 Ark. 336, 2 S. W. 2d 1082.

Affirmed.