Rose Mae WILLIAMS *v.* Bert
Ralph KILLINS

74-27                                        508 S.W. 2d 753

Opinion Delivered May 6, 1974

*Franklin Wilder,* for appellant.

*John Harris,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant seeks reversal of a chancery court decree ordering reformation of a deed and quieting title to a 45' by 122' strip of land in Pope County. Appellee and his wife, Viola, were divorced in 1965. At that time they owned a forty-acre tract of land. It was divided, pursuant to a property settlement incorporated in the divorce decree, equally in kind by exchange of deeds giving Viola title to the western 20 acres and appellee title to the eastern 20 acres. Viola immediately conveyed her portion by warranty deed to appellant, sister of the appellee, for $3,500. The par-

ties agreed that appellee was to have the house located on the property. Shortly after this transaction, a brother-in-law of the parties to this action, in the presence of both of them, stepped off the dividing line between the two tracts and found that it ran through the dwelling.

In 1973 appellant entered into negotiations to sell her 20 acres. A survey was run on April 6 which definitely established that the property line ran through the house. Three days later appellee signed a "Memorandum of Agreement" wherein he acknowledged that his occupancy of the 45' by 122' section of the western 20 acres on which the house extended was with the permission of appellant and that he was making no adverse claim to the land. Subsequently, appellant conveyed her tract to Jack Price, reserving the 45' by 122' section.

On July 16, appellee filed suit in Pope County Chancery Court seeking reformation of the deed he executed to Viola and praying his title to the strip in controversy be quieted. The petition alleged mutual mistake in the deed to Viola and further asserted appellee's right to the property by adverse possession. There is no allegation of mutual mistake in the deed from Viola to appellant, but since this was all part of the same transaction we will treat the allegation, as both the parties and the court below appear to have done, as applying to both deeds. Following a hearing on September 20, 1973, the chancellor, by a nunc pro tunc decree made and entered on that day, ordered reformation of the deed from Viola to appellant and quieted appellee's title to the land in controversy. This appeal followed.

We will set aside the findings of the chancellor only if they are clearly against the preponderance of the evidence. *Hendrix* v. *Hendrix*, 256 Ark. 289, 506 S.W. 2d 848 (1974); *Williams* v. *Campbell*, 254 Ark. 592, 495 S.W. 2d 512. Having reviewed all the evidence, we find that the chancellor's ruling granting reformation and quieting title in appellee was against the preponderance of the evidence.

The allegation of mutual mistake in appellee's petition is that both he and Viola mistakenly believed the house was on the eastern tract. According to appellee's testimony, at the time of the divorce decree all the parties thought the dwelling

was on the eastern section. Viola testified that at the time of the divorce she was willing to allow appellee to have the house but that no dividing line was ever run and she had no idea where the line would have been had it been surveyed. Appellant testified that when she took the deed from Viola she did not know where the property line ran but that it made no difference to her since, regardless of its location, appellee was to have the use of the house. Appellee testified that the agreement was to divide the tract down the middle. As previously noted, shortly after appellant received her deed, she and appellee were present when her brother-in-law stepped off the property line and found that the house was astride the line. Appellee admitted that, shortly thereafter, and before appellant left to return to her home in California, appellant had told him that he could use the house as long as he lived in it and used it as his residence. Following the April 6, 1973, survey, appellee signed the memorandum admitting he occupied the small tract in controversy with his sister's permission.

To be entitled to reformation of a written instrument upon the ground of mutual mistake, a party must show beyond reasonable controversy that the mistake was mutual. *Kromray* v. *Stobaugh*, 212 Ark. 377, 206 S.W. 2d 171; *Parker* v. *Carter*, 91 Ark. 162, 120 S.W. 836, 134 Am. St. R. 60. The evidence must be clear, unequivocal and decisive. *Booe* v. *Booe*, 210 Ark. 709, 197 S.W. 2d 474; *Corey* v. *The Mercantile Insurance Co. of America*, 205 Ark. 546, 169 S.W. 2d 655; *Cherry* v. *Brizzolara*, 89 Ark. 309, 116 S.W. 668. The testimony of both appellant and Viola fails to establish that either of them was under any misapprehension as to where the property line ran. Rather their testimony reveals they were unconcerned as to the exact location of the line. Appellee claims he was mistaken but his conduct is inconsistent with that assertion. Having learned in 1965 that the house probably extended over onto the western tract, appellee waited eight years to take action to correct the alleged error. Furthermore, following the April survey which definitely established that the house was astride the line, appellee signed the document admitting that his occupancy of the land in controversy was with the permission of his sister. Appellee attempts to discount this damaging admission by saying he was advised to sign it by appellant's attorney, his attorney in the 1965 divorce action, who allegedly told appellee he would have to sign it or move his house. Appellant actually asked appellee

to sign the instrument and any statement by this attorney was made in response to appellee's inquiry of him when appellee called the attorney by telephone. The explanation does not diminish the evidentiary value of the document.

From the evidence it is certainly reasonable to infer that from 1965 the parties knew the deed was correct and the property line ran through the house but that this was not important since appellant had purchased the land for appellee's use. We find that appellee failed to meet the standard of proof necessary to justify reformation based on mutual mistake and that the chancellor's ruling was against the preponderance of the evidence.

Appellee's petition also sought to have his title quieted based on a claim of adverse possession. When adverse possession is asserted by one member of a family against another, stronger evidence is required to support the claim than in cases where the family relationship does not exist. *Baxter* v. *Young,* 229 Ark. 1035, 320 S.W. 2d 640; *Staggs* v. *Story,* 220 Ark. 823, 250 S.W. 2d 125; *McGuire* v. *Wallis,* 231 Ark. 506, 330 S.W. 2d 714. Appellant's testimony, which was uncontradicted, was that she purchased this 20 acres so that her brother might have the use of the entire tract. She said that on the day the line was stepped off, she told appellee he could have the use of the property as long as he wanted to live in the house. At no time during the period from 1965 until the filing of this action did appellee assert a claim of ownership to any portion of the western 20 acres, and as recently as three months prior to the institution of this suit he acknowledged in the memorandum that his use was by permission of appellant, and that he was making no claim of ownership adverse to appellant. When one's possession of land is by permission of the owner, such holding cannot ripen into an adverse right until the owner has notice of such claim and the holding has continued thereafter for the statutory period. *Harper* v. *Hannibal,* 241 Ark. 508, 408 S.W. 2d 591; *Still* v. *Still,* 239 Ark. 865, 394 S.W. 2d 733. Certainly, there was nothing to indicate to this sister who was living in California that her brother who was using her entire tract was claiming any part of it adversely to her. The evidence fails to show any basis for appellee's claim of ownership by adverse possession.

Since we find that appellee was entitled to neither refor-

mation nor quieting of title based on adverse possession, the decree must be reversed, and the cause remanded for the entry of a decree consistent with this opinion.