Harry H. PHILLIPS et ux *v.*
Lurlene CARTER

78-62                                    568 S.W. 2d 24

Opinion delivered July 10, 1978
(Division I)

*Richard E. Griffin,* for appellants.

*W. R. (Billy) Switzer,* for appellee.

FRANK HOLT, Justice. The trial court, sitting as a jury, found that appellee was entitled to possession of a one-half acre tract of land by virtue of her claim of adverse possession. Appellants contend there is no substantial evidence to support the court's finding.

On appeal "we affirm if there is any substantial evidence to support the finding after reviewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the appellee." *Green* v. *Harrington,* 253 Ark. 496, 487 S.W. 2d 612 (1972). There we explained that "in testing the sufficiency of the evidence as being substantial in nature, we consider the testimony of the appellees alone or that portion of all the evidence which is most favorable to them" and reverse only when it appears that there is "no reasonable probability that the incident occurred as found by the trial court." Here, appellee had the burden of proving her claim of adverse possession. *Utley* v. *Ruff,* 255 Ark. 824, 502 S.W. 2d 629 (1973). In order for adverse possession to ripen into ownership, "the possession for seven years must have been actual, open, notorious, continuous, hostile and exclusive, and it must be accompanied with an intent to hold against the true owner." *Utley* v. *Ruff, supra.*

However, here appellants argue there was no evidence establishing that the appellee's entry upon and subsequent occupancy of the land were adverse, as distinguished from permissive, to appellants' record ownership rights in the property and payment of taxes. Appellants submit that the evidence at best demonstrates that appellee intended to hold the land under a claim of right and communicated such an intent to them only after her husband's death in 1971.

Appellee and her husband moved upon the disputed property in 1967 pursuant to an oral agreement that they would receive a deed from the appellants. Under this agree-

ment, as asserted by appellants, the Carters were allowed to move their trailer on the property upon payment of $250 (which payment was made) with the condition that if they moved off the property, possession would revert to the appellants upon the return of the $250 payment. Appellants admit that the Carters were promised a deed with this reservation. The deed was never delivered. The Carters made considerable improvements on the property. After her husband's death in 1971, Mrs. Carter continued to live on the premises until March, 1972, when she moved her trailer to her sister's yard because she "was afraid to stay there" by herself. About a week or two later, Mrs. Carter leased the half acre and thereafter continued to lease the land to a succession of tenants until appellants brought this action for possession in 1976. All tenants who occupied the premises paid rent directly to Mrs. Carter. There was evidence this was with appellants' permission. Mrs. Carter's request for delivery of the deed after her husband's death was to no avail. She testified that a few days before her husband died in 1971 appellant Mr. Phillips, in her presence, assured her husband not to worry about the deed inasmuch as it was being drafted by a lawyer. During that discussion, no conditions were mentioned and, further, she had never heard of any restrictive conditions. She was present when her husband paid the $250 to the appellants for the property. On that occasion nothing was said about the deed containing "any conditions." Appellant Phillips finally refused to deliver her a deed when he learned that she might sell the property. Appellant Phillips was told by appellee's tenants that they were paying rent to Mrs. Carter. Mr. Phillips admitted that he had asked "her to sell it to me. The only response I ever got from her was that it was worth more than what she give me for it." About nine or ten months before the trial of the case in 1977, Mrs. Carter refused appellants' $450 check for the property. One witness testified that Phillips told him that, according to the terms of the agreement, the Carters "were to give him a chance to buy the property back."

We have stated: "For possession to be adverse, as distinguished from permissive, it is only necessary that it be hostile in the sense that it is under a claim of right, title, or ownership as distinguished from possession in conformity with, recognition of, or subservience to, the superior right of

the owner, which is permissive." *Barclay* v. *Tussey,* 259 Ark. 238, 532 S.W. 2d 193 (1976). There the appellant had entered into possession claiming a right based upon an oral exchange of lands. In setting aside the trial court's finding that appellant's possession was permissive in its inception, we stated: "Entry by one claiming title under a parole grant or exchange is adverse and not permissive. . . . " We explained that "although entry under such a grant is permissive and friendly in the popular sense, it is nonetheless hostile and adverse to the paper title in the legal sense, because there is an assertion of ownership in the occupant." When we view the evidence most favorable to the appellee, as we must do on appeal, there is substantial evidence to support the court's finding that the Carters' original entry into possession of the property under an admitted oral agreement was adverse, and this adverse possession continued for nine years preceding this litigation.

Neither can we agree with appellants' contention that Mrs. Carter's relinquishing possession for one or two weeks prevents her possession from being continuous in nature. As stated in 2 C.J.S. Adverse Possession § 197:

> It is the general rule that mere temporary absences of claimant from the land adversely possessed by him or periods of vacancy of such land which evince no intention of abandonment do not interrupt the continuity of the adverse possession, provided the absence or vacancy does not extend over an unreasonable period.

Further, we find no merit in appellants' contention that the fact Mrs. Carter's husband was a second cousin to appellant, Mrs. Phillips, brings this case within the perimeters of our holding in *Williams* v. *Killins,* 256 Ark. 491, 508 S.W. 2d 753 (1974), that stronger evidence is required to prove adverse possession against a family member.

Affirmed.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and FOGLEMAN, JJ.