Earl Ray SORRELLS and Sandra Lee SORRELLS,
His Wife *v.* BAILEY CATTLE COMPANY

CA 79-226                                      595 S.W. 2d 950
Court of Appeals of Arkansas
Opinion delivered March 12, 1980
Released for publication April 2, 1980

802

*Homer Tanner,* for appellants.

· *Meredith P. Catlett* and *Friday, Eldredge & Clark,* for appellee.

ERNIE E. WRIGHT, Chief Judge. Appellants, Mr. and Mrs. Sorrells, instituted action in the Lonoke Chancery Court on October 3, 1979, to rescind a contract under which they undertook to purchase 30 acres of land in Lonoke County, Arkansas from the appellee, Bailey Cattle Company, Inc. Appellants alleged the contract was indefinite in essential terms and that appellee had breached the contract. The appellee filed an answer, and a counterclaim to foreclose the equitable interest of appellees. At the conclusion of the trial the chancellor found the contract to be valid, appellants to be in default on payments under the contract, and entered judgment against appellants in the sum of $22,332.24 principal together with interest through December 31, 1977 in the amount of $2393.46 with interest on the aggregate amount of $24,725.70, at the rate of 9 per cent per annum from January 1, 1978 until paid together with costs. The judgment was decreed to be a lien on the land and foreclosure sale was ordered if the judgment should not be paid within ten days.

On appeal, appellants seek reversal and assert the court

erred in denying rescission.

On November 10, 1976, the appellant, Earl Ray Sorrells, paid earnest money of $2700.00 and made a written offer on a standard offer and acceptance form to purchase the following described land:

> 30 acres more or less located in Magnass Creek Valley Bailey Cattle Co. properties, in the Southwest corner running 1980' North/South and 660' East/West.

No location of the land by county, state or other description appeared in the offer. The offer was promptly accepted by execution of the acceptance on the offer form by Bailey Cattle Company.

The consideration and manner of payment in the offer and acceptance reads as follows:

> The Buyer will pay 27000.00 for the property, 2700.00 in cash and the balance of $24,300.00 as follows: Ten yr. contract but amortized on 240 monthly payments each approx. 216.84 per mo.

The offer and acceptance provided the Seller would convey the property by general warranty deed to the Buyer, Earl Ray Sorrells, and contained the following provisions:

> The owner of the above property, hereinafter called Seller, shall furnish at Seller's cost a complete abstract reflecting merchantable title satisfactory to Buyer's attorney, however Seller shall have an option to furnish Buyer, in place of abstract, a policy of title insurance, and submission of an abstract shall not constitute a waiver of this option. Seller shall have a reasonable time after acceptance within which to furnish abstract or title insurance. If objections are made to title, Seller shall have a reasonable time to meet the objections or to furnish title insurance.

The offer and acceptance provided that if title re-

quirements are not fulfilled the earnest money would be promptly returned to the Buyer.

The offer was made through the real estate · office of Ernest Bailey, broker, and Ernest Bailey and his wife were the owners of all the stock of Bailey Cattle Company, Inc., the purported owner of the land involved in the transaction in issue. Mr. Bailey signed the acceptance of the offer on behalf of Bailey Cattle Company and is president of the company.

Mr. and Mrs. Sorrells went to the Bailey Real Estate Office for the purpose of buying some land in Lonoke County. They did not know Mr. Bailey, but stopped in his office as it was one of the first realty offices they observed when they drove into Cabot. They met Mr. Dan Molder, a salesman for Bailey's realty office, who showed them the thirty acres in question. They walked the property and Mr. Molder showed what he said were some boundary lines, but later Mr. Bailey told Mr. Sorrells that was not the true line.

At some unknown date early after the offer and acceptance was executed on November 10, 1976, Mr. and Mrs. Sorrells and Bailey Cattle Company executed an undated instrument styled "Purchaser's Agreement" provided by Mr. Bailey in which both Mr. and Mrs. Sorrells contracted to buy from the appellee some completely unidentified property in Lonoke County Arkansas. The agreement called for the same consideration as the offer and acceptance and had attached a note executed by appellants for the deferred portion of the purchase price of $24,300.00. The attached note, executed by appellants, was likewise undated. Although the offer and acceptance and the Purchaser's· Agreement made no provision for interest, the note indicated interest and the payment clause reads, "Ten year contract based on twenty year pay out at 9% interest (to start January 10, 1977) principal and interest to be paid monthly, with payments of $218.64/mo."

The contract was entered into with the understanding appellee was to furnish appellants a survey of the property and build a road to the property across adjacent land owned by appellee. Pursuant to the agreement as to the road, Mr. Bailey wrote appellants on December 28, 1977, as follows:

This is to inform you on the road to your property you purchased from me. It has been flaged and surveyors have almost completed the survey. Hopefully, this can be drawn up on paper promptly, so we may proceed on getting the road through.

As of the time of trial there was still no access road to the property and the appellants never at any time took possession of the property. Mr. Sorrells testified he requested Mr. Bailey to furnish an abstract but none was furnished. Mr. Bailey testified he did not remember Mr. Sorrells asking to be furnished an abstract, but he would not have furnished the abstract if the request had been made. He took the position he was not required to furnish an abstract until all of the purchase price was paid, and stated the Buyer could check the court records to see that he (Bailey) was the owner of the property.

The Purchaser's Agreement and attached promissory note provided no new benefit or consideration of any kind for the Buyer; but imposed the following additional restrictions, limitations and burdens upon appellants:

(1) The note called for interest on the principal at 9%, whereas the offer and acceptance did not call for interest.

(2) The Seller was entitled to a deed and abstract of title certified to the date of the agreement showing merchantable title only when the purchase price and interest is paid in full, whereas the offer and acceptance required the Seller to furnish an abstract reflecting merchantable title or title insurance within a reasonable time after the offer was accepted.

(3) The second agreement provided "½ mineral rights retained by Seller", whereas no such reservation appeared in the offer and acceptance.

Mr. Sorrells had never purchased rural lands previously, and had only purchased a platted city lot. He was unacquainted with the proper legal description of rural land by

metes and bounds or by township, section and range. Appellants were not furnished the legal description of the property until early 1978 and were never furnished any document, recorded or otherwise evidencing ownership by appellee. No documentary evidence of title by appellee was offered at trial.

On February 24, 1978, the appellants listed the 30 acres, still indefinitely described, for sale with Bailey's Realty Office, but there is no evidence Mr. Bailey's office ever made any effort to find a buyer. At that time appellants had not made the February, 1978, monthly payment and were in arreas three monthly payments due in 1977. Mr. Bailey agreed to extend the time for making the payments. Appellants made no payments after the listing. The aggregate of the payments made, in addition to the down payment of $2700.00, was $1967.76.

The Court held the contract had not been "breached significantly enough" by Seller to order a rescission, and although expressing concern that an abstract had not been furnished and concern about whether there was an adequate description to constitute a valid contract, concluded the offer and acceptance considered with the Purchaser's Agreement provided a sufficient key to locate the property and that the oral evidence explained the terms of payment. Personal judgment was rendered against appellants and foreclosure decreed.

Appellants contended below and on appeal there is no definite description of the land in the contracts or either of them to constitute a binding contract for the sale of land, thereby raising the issue of the statute of frauds. *Stanford* v. *Sager,* 141 Ark. 458, 217 S.W. 458 (1920). The Arkansas Statute of Frauds, Ark. Stat. Ann. (Repl. 1962) § 38-101, requires that a contract for the sale of an interest in land be in writing and signed by the party to be charged. Clearly neither agreement separately meets the requirement of the statute of frauds. Appellee contends the two instruments may be considered together and that combined they "Furnish some means of identification" of the land. The second document purports to contract with reference to some completely

unidentified property situated in Lonoke County, Arkansas, and the first document, while not identifying the property as being within the United States, sets out the dimension as being 1980 feet North and South, 660 feet East and West and that it is in the Southwest corner of Bailey Cattle properties in Magnass Creek Valley. There is no indication in the document that Bailey Cattle properties has only one tract in Magnass Creek Valley. On the contrary, the use of the plural "properties" rules out such assumption from the instrument itself. Also, the term "Bailey Cattle Properties" is not the corportate name of the Seller. Therefore, even if the instruments should be construed together in an endeavor to determine whether the combined instruments provide a sufficient key so that a complete description of the property could be ascertained, we would have great difficulty in saying that the instruments do provide an adequate key.

In *Turrentine* v. *Thompson,* 193 Ark. 253, 99 S.W. 2d 585 (1963), the court said with reference to the requirements of a land description:

> The deed itself must furnish a key by which the land sought to be conveyed may be identified. It will be observed that the description in the deed does not identify it as being in any county or even in the state. It does not furnish a key by which the land might be certainly identified . . . Had the deed said that it was all the land owned by Will Turrentine in Hempstead County, Arkansas, the deed itself would have furnished a key by which the land might be located, but to simply say it was all the land owned by him wherever situated is too uncertain.

Tiffany, Real Property, 3rd Edition, § 990, states that if a conveyance does not describe the land with such particularity as to render identification possible, the conveyance is nugatory, unless the deed contains a reference to another instrument which does include a sufficient description. Neither of the documents in the case before the court refers to the other or to any other document.

In *Fordyce Lumber Company* v. *Wallace*, 85 Ark. 1, 107 S.W. 160 (1907), the court said, "The description in the contract must be as definite and certain as that required in a deed of

conveyance. Nothing less will satisfy the statute of frauds, which requires such contract (for sale of land) must be in writing."

In *Burns* v. *Meadors,* 225 Ark. 1009, 287 S.W. 2d 893 (1956), the court held a metes and bounds description in a proffered deed referring to other conveyances, invalid in absence of showing by vendor that the conveyances referred to were recorded.

Even if the two instruments in the present case were considered together we cannot say they adequately describe the land.

The appellant, Mrs. Sorrells, clearly cannot be charged with the offer and acceptance as a part of any contract on her part.

However, we conclude the two instruments cannot be combined. First, appellant, Sandra Lee Sorrells, was not a party to the offer and acceptance and there was no provision in that instrument for any conveyance to her. The rule permitting instruments executed in the course of a transaction to be considered and construed together applies only to instruments executed by the same parties and for the same purpose.

*Rawleigh Co.* v. *Wilkes,* 197 Ark. 6, 121 S.W. 2d 886 (1938), states the general rule:

> The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are, in the eyes of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance.

Since the contract before us was for the sale of real estate we must look beyond the precedents applying to contracts

not governed by the statute of frauds.

To permit consideration of two or more instruments together in a transaction for the sale of real estate to meet the requirements of the statute of frauds there must be some incorporation by one of the other or some reference to the other found in the instrument. Here we find no such reference in either instrument to the other. We cannot tell with any certainty by inspection of the instruments that they relate to the same land, we cannot rule out that the second instrument is not a purported contract for the purchase of a second tract of real estate, we can ascertain the second agreement purports to bind a new party, Sandra Lee Sorrells, it purports to contract for the conveyance of undescribed land in Lonoke County to both Buyers upon payment of the purchase price, one-half of the mineral rights in the land is excluded from the sale, and there are substantial differences in the two instruments as to interest on the deferred purchase price and the obligation of the Seller as to time for furnishing an abstract and evidence of merchantable title.

The United States Supreme Court had occasion to consider the application of the statute of frauds when two alleged contracts were in issue in *Williams* v. *Morris,* 95 U.S. 444 (1877). The case was an appeal from the Supreme Court of the District of Columbia involving a dispute over a contract for the sale of real estate in the District. By law the statute of frauds of Maryland was applicable and the statute was identical to our § 38-101. Both statutes are adoptions of Section 4 of the ancient English Statute of Frauds, IV Chitty's English Statutes, 6th Edition, 1141. Two alleged contracts different in form and substance for the sale of premises were involved. The court held that even if parol evidence were introduced to show that one or both of the contracts were actually made in adequate terms and free of ambiguity, still the contract would not satisfy the requirement of the statute of frauds that the essential elements of the contract be in writing. None of the terms can be supplied by parol. The court said:

Unless the essential terms of the sale can be ascertained from the writing itself, or by reference in it to something else, the writing is not a compliance with the statute;

and if the writing be thus defective, it cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute was intended to prevent.

Neither instrument in the case before us refers to the other. Only by parol evidence can it be ascertained with any degree of certainty that the same premises are the subject of both agreements. The contracts are between different parties and conflict in numerous substantial ways.

In *Pitek* v. *McGuire,* 51 N.M. 364, 184 P. 2d 647 (1946), the New Mexico Supreme Court cited *Williams* v. *Morris, supra,* in holding antecedent correspondence could not be used to aid the faulty land description in the memorandum endorsed on a check, since the endorsement contained no reference to such correspondence. New Mexico in early years adopted the same English Statute of Frauds as has Arkansas. *Rhodes* v. *Wilkins,* 83 N.M. 782, 498 P. 2d 311 (1972), holds that any collateral means or data by which real estate can be identified must necessarily be referred to in a written contract or memorandum. The court said:

> If it were otherwise, and parol evidence could be used to supply the defect, the purpose of the statute of frauds would at once be defeated and lost.

In *Kyle* v. *Jordon,* 196 Ala. 509, 71 So. 417 (1916), the court held a supplemental writing could not be considered with a deed because there were contradictions, in express terms, between the recitals in the deed and those in the separate writing, as to both the parties to, and the consideration for, the deed, and that there was no internal evidence of the identity and unity of the two writings to constitute a transaction sufficient to dispense with a reference in the deed to the separate writing, and the deed on its face indicates no reference to any other writing. The court said:

> While it is possible, or even probable, that both the deed and the separate writing may relate to, or attempt to describe the same piece of land, yet there is no reference in the deed to any separate writing necessary to complete it, and nothing on the face of the papers to show

that one is contemporary to the other. The evidence to this end is wholly oral, and therefore inadmissible and unavailing to unify the two writings. We still adhere to the former holding of this court that the rule is not absolute that the several papers shall, on their face, indicate a reference to each other, and that parol evidence may be admissible, in some cases, of contemporaneous facts, to show connection between the several writings; but to allow such proof, there must be some internal evidence of the identity and unity of the several writings as constituting a single transaction.

*Moore* v. *Exelby,* 170 Ark. 908, 281 S.W. 671 (1926) approved the use of letters beween the parties to be construed together as an enforceable contract for the sale of real estate. However, the court said:

> In order to be sufficient, the letters relied upon must by reference to each other disclose every material part of a valid contract and must be signed by the party sought to be charged.

The provision in the offer and acceptance and in the note attached to the subsequent agreement as to the payment of the deferred purchase price is ambiguous and uncertain. Mr. Sorrells testified he did not know what the language meant. When Mr. Bailey was asked what the language meant he said, "It's a ten year—a twenty year pay out, but coming due in ten years."

We agree with appellants' contentions the written agreements separately or considered together are too indefinite to be enforceable.

In *Kromray* v. *Stobaugh,* 212 Ark. 377, 206 S.W. 2d 171 (1947), the court said:

> It may be true, as counsel state, that we have gone further than most courts, to require that all essential provisions of the contract be in writing in order to satisfy the statute of frauds; but at all events, such is our holding, and we adhere to it.

There are other reasons for reversal hereinafter discussed.

First, we point out that Mr. Sorrells already had the executed offer and acceptance to purchase the 30 acres when the second agreement was executed. The new agreement purported to deprive the Buyer of benefits provided by the first instrument, but it provided no new consideration or benefits to the Buyer. The weight of authority is that a subsequent agreement must be supported by consideration other than the consideration involved in the existing agreement. Here there is no new consideration flowing to the Buyer. Therefore, the new agreement is void and of no effect for lack of mutuality of consideration.

However, even if it should be said the last agreement and the offer and acceptance should be construed together as one contract, the rule is well established that ambiguous and conflicting provisions in an agreement will be construed most strongly against the party who prepared or caused the documents to be prepared. *Ramsay Ex'x* v. *Roberts,* 240 Ark. 943, 403 S.W. 2d 57 (1966). Here it was the Bailey corporate seller and its agent, Mr. Bailey the broker, who prepared or caused to be prepared all documents in the transaction, using printed forms with little care in filling in a minimum of information. The Buyers were so completely inexperienced they did not know to insist upon the prompt furnishing of an abstract showing merchantable title or title insurance as called for by the offer and acceptance. Therefore, whether we consider the second agreement as void or whether we consider both contracts together as the contract, clearly the appellee breached a vital part of the contract in failing to furnish an abstract promptly after acceptance of the offer, as equity compels us to conclude the provisions in the offer and acceptance with reference to promptly furnishing an abstract should control rather than the lax provision in the new agreement. Compliance with the provision in the offer and acceptance would have placed no undue burden on the Seller and was vital to the Buyer being able to determine whether he was acquiring merchantable title. At least the Seller should have made an abstract available for examination even if the

abstract should later have been held by the Seller until the purchase price was paid in full.

Both contracts called for merchantable title and the undisputed evidence was that at the time of sale the 30 acres was mortgaged with other lands to First National Bank in Little Rock, a fact learned for the first time by the appellants after execution of the contracts. Appellants first learned at trial the amount of the mortgage when Mr. Bailey testified the mortgage debt is approximately $300,000.00 and the total land embraced in the mortgage, including the 30 acres, is five hundred acres. Mr. Bailey has nothing in writing binding the mortgage holder to release the 30 acres from the mortgage until the mortgage is paid. Thus, with the land so encumbered, it is clear there is an uncertainty as to whether the appellee would be in a position to furnish a merchantable title to the property after all the purchase price is paid. Without an abstract, appellants are uninformed as to other possible defects of title. In 6 Williston on contracts, Third Edition, 372, it is stated:

> It cannot be admitted that a vendor whose title is so defective as to justify a purchaser in inferring that the defect is not likely to be cured can compel the purchaser to wait until the day fixed for performance in order to see whether by chance the vendor may be able to cure the defect.

We believe this rule to be based on sound reasoning, and decisions are there cited from many jurisdictions in keeping with the rule. Rest. Contracts, § 283 is in accord.

Neither the offer and acceptance nor the Purchaser's Agreement were acknowledged, and thus they were not recordable. The appellants were without means of giving notice to the world of their equitable interest in the property, as unacknowledged instruments for the conveyance of an interest in real estate do not qualify for recordation. Ark. Stat. Ann. (Repl. 1971) § 49-211.

The land is subject to foreclosure sale should the appellee default on its $300,000.00 bank mortgage; and

should the appellee become a judgment debtor or bankrupt prior to delivery of a deed to the appellants, the land would be subject to judicial sale free of the recorded equitable interest of appellants.

It was established by undisputed evidence that concurrent with the written contracts there was an oral agreement appellee would build a road extending through appellee's adjacent land to the thirty acres. This obligation was recognized by letter from Mr. Bailey to appellants. There was no other access to the property. This was a vital part of the consideration incident to the purchase, as it can be reasonably assumed appellants would not have contracted to pay $900.00 per acre for unimproved land without access, and the road was essential to the use and enjoyment of the property. This evidence was received without objection. No road had been built as of the date of trial, well over two years after the transaction. While the evidence does not disclose a precise date when the road would be built, the law presumed such an obligation will be performed in a reasonable length of time. We hold that more than a reasonable time had elapsed for appellee to build the access road and furnish a survey at the time appellants filed suit for the rescission, and that there was a breach of a vital part of the agreement under which appellants contracted to purchase the property. While evidence of the breach was received without objection, it was the duty of the court of equity to treat the pleadings as amended to conform with the proof.

Ark. Stat. Ann. § 27-1155 (Repl. 1979) provides that no variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party; and Ark. Stat. Ann. § 27-1160 provides the court may at any time, in furtherance of justice, conform the pleading to the facts proved. Under the authority of *Old American Life Ins. Co.* v. *Lucy Harvey,* 242 Ark. 720, 415 S.W. 2d 66 (1967), in a de novo review of the case we treat the pleadings as amended to conform with the proof.

At trial, appellee introduced a "preliminary" sketch or plat of some five hundred acres of land presumably belonging

to appellee. The plat is not recorded nor is it intended to be recorded. It does not indicate in what county the land is situated. It purports to identify the subject thirty acres with "X" marks in the Southwest corner and indicates a road running through an adjacent body of land into the thirty acres. The road shown on the sketch remains only a proposed road providing access to the subject property. An examination of the undated "preliminary" plat clearly fails to show any survey of the thirty acres. The eastern part of the plat by indicating corners identifiable by section, distances, bearings, and evidence of previously set corners, shows evidence of some surveying on land substantially east of the thirty acres.

When appellee failed to built the road, failed to furnish a survey, failed to provide an abstract evidencing merchantable title or title insurance, and failed to show any certainty of being able to deliver a merchantable title with an admitted $300,000.00 mortgage on the property, appellants were left in the position of having no reasonable opportuity to resell their equity. Their only hope was that the appellee, who was in singular position to provide the access road and possibly arrange for merchantable title, would find a buyer for appellant's equity. However, there is no evidence of any effort by appellee, as owner or broker, to find a resale.

Even if the agreements were construed together and a binding contract was found to exist, the rendering of judgment against the appellants in favor of appellee in the face of substantial breaches of the contract on the part of appellee, and decreeing foreclosure of the thirty acres, sans the access road, sans the survey and with a $300,000.00 outstanding mortgage is clearly unjust and inequitable.

The foreclosure sale of the property under such conditions would place appellant in an extremely vulnerable position. The appellee having control over road access to the property and the possible means of working out arrangements with the mortgage holder for clearing the $300,000.00 encumbrance on the title, could well be the only bidder interested at a foreclosure sale. Such a sale could and likely would result in a very low sale price leaving appellants

with a relatively large unsatisfield personal judgment against them.

Even if the appellees were entitled to foreclosure, it was the duty of the court of equity to mold the remedy and impose conditions with reference to clearance of the $300,000.00 mortgage lien and building of an access road as would be just to the appellants. The Arkansas Supreme Court in *State of Ark. Ex. Rel* v. *Cate,* 236 Ark. 836, 371 S.W. 2d 541 (1963) sets out in some detail the powers and discretion of a court of equity in molding the granting of relief with such conditions attached as will avoid injustice to the party against whom the relief is granted. The decree makes no such provisions.

Finding, as we do, that the evidence discloses an unenforceable contract under the statute of frauds, that the property involved is encumbered for more than ten times the sale price, that there is uncertainty as to whether the encumbrance could be cleared upon payment of the purchase price in full, and that the appellee has failed to furnish an abstract and build a road to the property, we hold the transaction to be void, and that appellants are entitled to recover the sum of $4667.76 paid on the contract with the judgment to be decreed a lien upon the land with provision for foreclosure. We decline to award pre-judgment interest, as apparently appellants could have been in possession of the property, although they did not in fact take possession.

Reversed and remanded with directions for entry of a decree consistent with this opinion.